**PHILLIPS PETROLEUM COMPANY et al.,**
**Appellants,**

**v.**

**R. T. BURKETT, Appellee.**

**No. 16125.**

Court of Civil Appeals of Texas.

Fort Worth.

June 24, 1960.

Rehearing Denied Sept. 16, 1960.

Brown & Murray and M. Hendricks Brown, Fort Worth, for appellants.

Herrick & McEntire and John W. Herrick, Fort Worth, for appellee.

RENFRO, Justice.

R. T. Burkett obtained a verdict and judgment against Phillips Petroleum Company and William E. Horne, Jr., in the amount of $18,000, being $10,000 for injuries sustained by him and $8,000 sustained by his wife as a result of an automobile collision which occurred on February 6, 1959.

The defendants did not deny liability, but in eleven points of error contend the judgment should be set aside because of the excessiveness of the verdict, or, that a remittitur should be ordered by this court.

Mrs. Burkett testified that before the injury she could do yard work and work in flower beds; she had no problems with her back prior to the accident; could do all her housework; had no prior trouble with her head; had no prior injuries to head; she remembered the car being struck, next she remembered she was sitting on curb; her head felt big as two, three or four heads, and was hurting "real bad"; she was miserable all over, but head hurt most; on arrival at hospital she was "jerking" all over; she remained in hospital day and a half; at home was so sore could hardly move for days; she was sore all over; had huge knot on her head; still has small knot on her head; it was weeks before she could do normal housework; her coccyx was sore and painful for four to six weeks; but as of time of trial was getting better; she thinks her back is going to "clear up"; after returning home from the hospital she spit up blood several mornings; her head feels thick or heavy, and she feels pressure "on my brain" that comes and goes practically every day, varying from two hours to all day; aspirin relieves it "most of the time"; she is nervous and worries about her condition; she cannot remember like she used to; no

bones were broken and there were no cuts on her head.

Mr. Burkett testified: Since the accident his wife has been extremely nervous, high tempered, does not rest at night, gets mad at little things, seems to forget little things, and she "just stays in more or less of a haze or worry", she spit up blood, could not do housework, and there has been no improvement; she complains daily of headaches; her memory was normal before accident.

Dr. King testified: He was the Burketts' family physician; at hospital Mrs. Burkett had a large bump on head, was dazed, had rapid pulse and was definitely in shock; x-rays failed to show fracture; he diagnosed injury as cerebral concussion; she has headaches, is weak, is forgetful and is not as alert mentally as formerly; she spit up blood as late as May, 1959; before accident she was alert, active, optimistic; now she is listless, "washed out," forgetful, not as active and not nearly so optimistic; the personality change will be permanent; her headaches and nervousness probably more or less permanent, the damage to the brain was to the nerve cells themselves; she will not have permanent disability in coccyx area.

Dr. Smith, neurosurgeon, called by defendants, testified: He examined Mrs. Burkett August 14, 1959; after hearing her history and giving her an extensive neurological examination he could find "no evidence of any kind of injury which had occurred that had left any effect on her brain or upon her peripheral nerves," and he could find nothing to account for her complaints.

Dr. Van Zandt, orthopedic surgeon, called by defendants, testified: He examined Mrs. Burkett August 17, 1959; he did not see any result of any accident or injury or trauma to her lower back or coccyx or spine, but it was possible she had bruised her sacro-coccygeal area.

As to his claim for damage for his own injuries, Mr. Burkett testified: The acci-- dent was a "terrible impact", his left hip and right knee were injured; prior to accident he owned a service station business, did light mechanic work, change tires, did battery work and lubricated and washed cars; did practically all the work himself; made a net profit of $4,316.24 in 1958; since February 6, 1959 (to Sept., 1959) earned seven or eight hundred dollars; when he went back to station five weeks after accident, business had declined; after accident his knee was size of gallon bucket, bruised and blue; he used crutches; before accident his condition was good; he had no prior trouble with hip or knee; after accident was on crutches four weeks, then "limped around" without crutches; swelling in knee remained several weeks; he still limps; if he "stays on it" several hours can hardly use it; has no control over knee "it just wants to flop like I haven't got no control over it"; after "squatting" down he "can't hardly get up"; when he reopened the service station he could not wash and lubricate cars or change tires; his profit came from such activities; he made no money the month he operated the station; he was without work several weeks, then worked temporarily but had to resign because his leg bothered so much; he is now managing a service station on 50/50 basis; he does not change tires or wash cars because his knee will not permit; he still has pain in knee at times; left hip does not bother much but does cause leg to get stiff; condition of right knee seems to be stationary since six weeks after the accident; his left hip still bothers some; at time of trial and for a period of three months prior he was making "$90.00 a week"; but had employees to do heavy work; his knee cap was not broken or knocked out of place; knee was not put in cast, but was bandaged for a week; he has worn a suport half dozen or more times; his hip was not dislocated or broken.

Dr. King testified: Plaintiff never had prior hip or knee trouble; at hospital Burkett was "noticeably suffering", right knee was swollen and bruised, noticeable

amount of muscle spasm in thigh and hip; has seen him 23 or 24 times; at hospital found that Burkett had some injury to the sub patella bursa; he had injury to the fibrous tissue around the left hip and hip joint, had to use crutches for several weeks; still had swelling in bursa when he last saw him month prior to trial, caused from irritation of the bursa and increase of fluid as a consequence of the injury; injured knee is larger than the other; has chronic traumatic bursitis, making it painful to use; "in all probability he is going to have more or less permanent pain in that knee"; witness diagnosed left hip as traumatic fasciaitis; as to the hip pain or disability "at least it will last a long time" or "an indefinite length of time."

Dr. Van Zandt testified: He examined Burkett August 17, 1959; from neither his examination nor the x-rays taken could he find any evidence that there was any result from any injury that Burkett may have sustained; he found no indication of traumatic bursitis of the right knee nor traumatic fibrositis of the left hip.

The jury was instructed it might take into consideration, in determining its answer to the damage issue concerning Mrs. Burkett, past mental anguish and physical pain and probable future mental anguish and physical pain, if any. In instructions accompanying the issue as to Burkett's damages the above elements were included and in addition the jury was instructed it might consider past and future loss of earning capacity, if any. It will be seen from the recital of the evidence that the elements of past and future mental anguish and physical pain had substantial support in the record as to both Burketts.

■ Personal injury damages are unliquidated and not capable of measurement by any certain standard. In such cases the jury has large discretion in fixing the amount of the award. Continental Bus System, Inc. v. Toombs, Tex.Civ.App., 325 S.W.2d 153.

■ A verdict will not be set aside where, on consideration of all the evidence, the court is unable to say the amount awarded was clearly excessive. Lancaster v. Browder, Tex.Civ.App., 243 S.W. 625, affirmed Tex.Com.App., 256 S.W. 905. Ordinarily a verdict will not be set aside as excessive when supported by the weight of the evidence. 5A C.J.S. Appeal and Error § 1651, p. 383. The evaluation of the pain and suffering of both Burketts, as well as Burkett's probable loss of future earning capacity, was a matter resting in the sound discretion of the jury. Prater v. Holbrook, Tex.Civ.App., 283 S.W.2d 263.

■■ In view of all the evidence before us we are unable to say the verdict was clearly excessive.

■ The defendants contend reversible error was committed by plaintiff's attorney in jury argument: " * * * that $50,000.00 is not, as Mr. Brown said, an astronomical figure. What is an astronomical figure I don't know. I read in the paper this morning that Jack Paar was sued for $750,000.00 in a slander suit, because someone's feelings were hurt. All I can say is maybe that is an astronomical figure, but if that is worth $750,000.00 for having your feelings hurt, what does it mean to have—* * *." At this point objection was made and the court promptly instructed the jury to disregard the argument. The argument was improper and should not have been made. The true test, however, in determining whether reversible error is present is the degree of prejudice flowing from the argument, whether the argument, considered in its proper setting, was reasonably calculated to cause such prejudice to the opposing litigant that a withdrawal by counsel or an instruction by the court, or both, could not eliminate the probability that it resulted in an improper verdict. Texas Employers' Ins. Ass'n v. Haywood, 153 Tex. 242, 266 S.W.2d 856; Rules 434 and 503, Texas Rules of Civil Procedure. Whether the argument influ-

**860**

enced the verdict unfavorable to appellant is to be determined as a matter of our judgment in the light of the record as a whole. Southwestern Greyhound Lines v. Dickson, 149 Tex. 599, 236 S.W.2d 115.

In our judgment, in light of the whole record, the instruction by the trial court cured whatever harmful effect, if any, as was occasioned by the argument.

■ ■ During the direct examination of plaintiff by his attorney concerning Mrs. Burkett's condition, defendants made an objection pointing out that Mrs. Burkett had testified that when she took aspirin her headaches went away. Whereupon plaintiff's counsel said: "This good lady has got a brain damage too, Hendricks." The jury was instructed to disregard the statement. Soon thereafter plaintiff stated while testifying, "I feel that she (his wife) has a brain injury." The jury was instructed to disregard the statement. The presumption is that the instruction to disregard the statements was followed by the jury. 41–B Tex.Jur., p. 368, sec. 300. In view of the prompt and proper instruction by the trial court, and the fact that plaintiff later introduced medical testimony that Mrs. Burkett did sustain a "generalizing injury to the brain", we think reversible error is not shown.

Plaintiff was permitted to testify he was worried about his wife's condition. The statement was made by plaintiff while testifying about his wife's condition, not about his own. In considering the testimony immediately preceding the statement, it seems clear to us that no juror of ordinary intelligence would consider the statement as a part of plaintiff's claim for compensation for the injury sustained by him.

■ Defendants say it was error to permit testimony concerning change of personality on behalf of Mrs. Burkett in the absence of pleadings to support such condition. Plaintiff plead that Mrs. Burkett sustained a cerebral concussion. Dr.

King testified Mrs. Burkett had a post concussion syndrome, and gave as symtoms thereof personality change, along with headaches, nervousness, loss of energy and forgetfulness.

The ultimate question was, "Did Mrs. Burkett suffer a post concussion syndrome?" The testimony concerning personality change was merely evidentiary of such concussion, and was not a new or different ground of recovery.

Judgment affirmed.