Stephen DURISH, Receiver for Summit Title Company, Inc., 18 Rush Creek, Ltd., David G. Edgar, and Edward P. DeZevallos, Appellants,

v.

PANAN INTERNATIONAL, N.V., Appellee.

No. B14–90–0077–CV.

Court of Appeals of Texas, Houston (14th Dist.).

March 28, 1991.

Bernard Wm. Fischman, San Antonio, Michael B. Newman, Houston, for appellants.

Kenneth Wynne, Craig L. Stahl, Houston, for appellee.

Before PAUL PRESSLER, JUNELL and ELLIS, JJ.

## OPINION

JUNELL, Justice.

This is an appeal from a judgment entered against Stephen Durish in his capacity as receiver for Summit Title Company, and 18 Rush Creek, Ltd., a partnership in which David G. Edgar and Edward P. De-Zevallos are members. Panan International sued 18 Rush Creek and its partners for breach of their fiduciary duties. Panan sued the receiver for Summit Title for Summit's refusal to return earnest money after the real estate closing was not completed. In three points of error, 18 Rush Creek, Ltd., Edgar, and DeZevallos complain of Panan's standing to sue and the trial court's award of attorney's fees and costs. Stephen Durish joins in those complaints and further complains of the failure of the trial court to follow certain procedures with regard to the receivership, the lack of findings against the receivers, and the award of $40,000 against the receiver. Finding no evidence of attorney's fees and no evidence that Summit should be accountable for more than the $25,000 earnest money, we modify the judgment to delete the attorney's fees and suggest Panan remit $15,000 of the $40,000 assessed against Summit Title. We affirm the remainder of the judgment.

Panan is a Netherlands Antilles corporation owned for the benefit of the Zuniga family of Guatemala City, Guatemala. The Zunigas desired to make investments in the United States. They sought an advisor, and were referred to DeZevallos as a real estate investment advisor. Panan entered into an earnest money contract with the Rush Creek partnership in contemplation of the purchase of a piece of land in Harris County. Pursuant to the terms of the contract, $25,000 earnest money was deposited with Summit Title Company. Summit, acting as agent for First American Title Insurance Company, issued a commitment for title insurance guaranteeing lien-free title in the seller. When the Zunigas appeared at Summit's office for the closing, they claim they learned there were liens encumbering the property, which had not been released. Subsequently, Summit Title paid the $25,000 earnest money to 18 Rush Creek, Ltd. Panan sued, alleging fraud and misrepresentation. Panan further alleged a fiduciary relationship between De-Zevallos and Panan and that DeZevallos had breached that relationship.

The jury found that Panan entered into a fiduciary relationship with DeZevallos and that DeZevallos breached his fiduciary duty concerning his status as a general partner of the partnership that owned the property. The jury further found that Summit Title failed to act in accordance with the earnest money contract.

In their first point of error appellants, 18 Rush Creek, Ltd., David G. Edgar, and Edward P. DeZevallos, claim the trial court erred in entering judgment for Panan because Panan did not have standing to sue. In his first point of error Stephen Durish, receiver for Summit Title, also complains of Panan's standing to sue. Appellants assert Panan was a foreign corporation that had not obtained a certificate of authority to transact business in Texas; therefore, Panan was not entitled to maintain a suit arising out of its business transacted in Texas. TEX.BUS.CORP.ACT ANN. arts. 8.01 and 8.18 (Vernon 1980). Article 8.18 prohibits any foreign corporation, which is transacting, or has transacted, business in Texas without a certificate of authority to maintain a suit on a cause of action arising out of the transaction of business in Texas. Panan does not dispute that it is a foreign corporation, and that it did not, prior to judgment, obtain a certificate of authority. Article 8.01 provides:

> Without excluding other activities which may not constitute transacting business in this state, a foreign corporation shall not be considered to be transacting business in this state, for the purposes of this Act, by reason of carrying on in this state any one (1) or more of the following activities:
>
> *    *    *    *    *    *

(7) Creating evidences of debt, mortgages, or liens on real or personal property;

(10) Conducting an isolated transaction completed within a period of thirty (30) days and not in the course of a number of repeated transactions of like nature[.]

■ "Evidences of debt" include all contractual obligations to pay in the future for consideration presently received. *Searsy v. Commercial Trading Corp.*, 560 S.W.2d 637, 641 (Tex.1977); *Killian v. Trans Union Leasing Corp.*, 657 S.W.2d 189, 191 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.). Panan argues that the real estate transaction it sought to enter into falls within this exception. Appellants claim the earnest money contract did not create a debt because it "was a self-contained transaction, which if its conditions were met, would have no further effect after closing on the property."

■ The Zunigas signed the earnest money contract in Guatemala, outside of Texas. The signing of that contract outside of the state did not constitute transacting business in this state. *See Lakeview Land Co. v. San Antonio Traction Co.*, 66 S.W. 766, 768 (Tex.1902). The first transaction to take place in Texas would have been the closing of the real estate transaction. Panan's contract to buy real estate included incurring debt in the form of a promissory note for part of the purchase price and a deed of trust securing that note. The business transaction Panan entered into created evidences of debt and, therefore, constituted an exempt transaction under Texas Business Corporation Act, article 8.01(B)(7) (Vernon 1980).

■ Further, the real estate transaction falls within the "isolated transaction" exception. The parties do not dispute the fact that this was Panan's only transaction in Texas. Appellants claim, however, that the transaction, had it been completed, could not have been completed within thirty days. Appellants claim the earnest money contract was executed on November 3, 1983. Because the closing date was set for December 5, 1983, appellants assert the

transaction could not have taken place within thirty days. The earnest money contract states, however, that the original contract and earnest money was received by Summit on November 7, 1983. Until that date, the earnest money contract was not binding. Therefore, the transaction, had it been completed, could have been completed within thirty days. Therefore, Panan falls within the "isolated transaction" exception to article 8.01.

■ Moreover, Panan obtained a certificate of authority before the trial court lost its plenary jurisdiction over the judgment. In *Troyan v. Snelling & Snelling, Inc.*, 524 S.W.2d 432, 434 (Tex.App.—Dallas 1975, no writ), the court stated that the purposes of article 8.18 were met when the corporation obtained the certificate of authority prior to entry of final judgment. In that case, the trial judge, after verdict, but before judgment, allowed the plaintiff thirty days to obtain a certificate of authority to maintain its suit. We see no reason this holding could not be extended here where the plaintiff obtained the certificate of authority before the motion for new trial was overruled. The trial court had not lost its plenary power over the judgment at the time Panan obtained the certificate.

Article 8.18(B) states:

The failure of a foreign corporation to obtain a certificate of authority to transact business in this State shall not impair the validity of any contract or act of such corporation, and shall not prevent such corporation from defending any action, suit or proceeding in any court of this State.

■ The comment of the bar committee explains that the purpose of the article was to abolish the former rule, which did not allow a foreign corporation to bring suit in the Texas courts, even after securing a permit, on a cause of action arising out of intrastate business transacted in Texas, but allowed a corporation that had not secured a permit, to defend a suit after having obtained a certificate of authority. TEX. BUS.CORP.ACT ANN. art. 8.18 comment (Vernon 1980). The primary objective of the

present statute is to encourage a corporation to obtain authority rather than to penalize it for doing business without authority. *Troyan v. Snelling & Snelling, Inc.,* 524 S.W.2d at 434. That objective was accomplished in this case by production of the certificate before the trial court overruled the motion for new trial. Panan's failure to obtain a certificate of authority prior to judgment is not fatal to its maintenance of the suit. We overrule appellants' first point of error.

In their second point of error appellants, 18 Rush Creek, Ltd., David G. Edgar, and Edward P. DeZevallos, claim the trial court erred in allowing Panan's attorney to testify to attorney's fees because the attorney was not disclosed as an expert witness. In his fifth point of error Durish also complains of the attorney's fee award. One of appellants' interrogatories asked if there were any expert witnesses who would testify at trial. Panan replied, "None yet selected." Panan did not later supplement the answers, nor did it designate expert witnesses in any other manner. When Panan's attorney, Kenneth Wynne, attempted to testify to his fees, appellants objected, claiming the trial court should disallow the testimony because Panan did not designate its attorney as an expert.

■ Rule 166b(5) of the Texas Rules of Civil Procedure placed a duty on Panan to supplement its answers to the interrogatories and inform appellants that it intended to call its attorney as an expert to testify concerning attorney's fees. Under Texas Rule of Civil Procedure 215(5), failure to supplement results in the loss of the opportunity to offer the witness's testimony. The sanction is automatic. *Morrow v. H.E.B., Inc.,* 714 S.W.2d 297 (Tex.1986). The exception is when the party offering the testimony shows good cause why the testimony should be allowed despite the discovery sanction. *Sharp v. Broadway Nat'l Bank,* 784 S.W.2d 669, 671 (Tex. 1990). The party offering the testimony bears the burden to show good cause to the trial court. *Clark v. Trailways, Inc.,* 774 S.W.2d 644, 646 (Tex.1989). Panan attempted to show good cause by showing

that appellants' attorneys had taken Wynne's deposition prior to trial and had questioned him about attorney's fees at his deposition. This does not show good cause. The absence of surprise, unfairness, or ambush does not alone satisfy the good cause exception to the sanction of automatic exclusion. *Sharp v. Broadway Nat'l Bank,* 784 S.W.2d at 671. The fact that a witness's identity is known to all parties is not in itself good cause for failing to supplement discovery. *Id.*

■ Panan further alleges the error in failing to disclose its lawyer as an expert is harmless error. Panan claims the only aspect of Wynne's testimony that required expert testimony was his opinion that Panan's attorney's fees were reasonable and necessary. Panan asserts other evidence was admitted on the reasonableness of its attorney's fees. The evidence Panan relies on came from Alvin Zimmerman, identified as an expert on attorney's fees in response to Panan's interrogatories. Zimmerman was asked if, in his opinion, Panan's attorney's fees were reasonable; to which he replied, "I don't believe so." Panan's attorney attempted to rehabilitate Zimmerman by asking what Zimmerman found unreasonable about his fees. Zimmerman answered:

> So, you know, in looking at your billing, Mr. Wynne, if I see, you know, matters where conferences, long hours, or I see two lawyers in the courtroom on a matter like this, I have to think to myself, "You know, this just isn't—it may not be that kind of a case, that you know, a firm of your size would put that kind of resources into." And that's my only point.

That testimony is not, as Panan asserts, evidence of the reasonableness of its attorney's fees. If anything, it is evidence to the contrary. Under these circumstances, there was no admissible evidence on attorney's fees. *See E.F. Hutton & Co., Inc. v. Youngblood,* 741 S.W.2d 363 (Tex.1987). We sustain appellants' second point of error and Durish's fifth point of error.

■ In their third point of error appellants, 18 Rush Creek, Ltd., David G. Edgar, and Edward P. DeZevallos, claim the trial

court erred in awarding Panan its expert fees, subpoena fees, and the cost of copies of depositions. Appellants recognize that Texas Business and Commerce Code, section 27.01 (Vernon 1968) authorizes the award of "reasonable and necessary attorney's fees, expert witness fees, costs for copies of depositions, and costs of court." Their primary complaint is that the evidence of Panan's costs was submitted post-verdict in the form of an affidavit. Appellants claim the issue of the amounts to be awarded should have been tried to a jury. Nothing in the statute requires that issue to be tried to a jury. Further, Panan's affidavit of its costs did not prevent appellants from challenging the reasonableness of those costs through a counter-affidavit. We overrule appellants' third point of error.

■ Stephen Durish brings three points of error unique to his position as receiver for Summit Title Co. In his second point of error Durish claims the trial court erred in entering judgment against him because Panan presented no evidence that established liability against him. Durish claims Panan made no allegations, produced no evidence, and submitted no special issues as to Stephen S. Durish, Receiver for Summit; therefore, the judgment does not conform to the evidence and the issues submitted.

Durish, as receiver, stands in the place of Summit. *See Nelson v. Thompson,* 64 S.W.2d 373, 375 (Tex.Civ.App.—Dallas 1933, writ dism'd). The judgment against Durish is in his capacity as receiver for Summit, not in his individual capacity. Durish was not personally involved in the transactions involved in this lawsuit. The special issues properly inquired of the actions of Summit Title Co., the entity for which Durish is the receiver. We overrule Durish's second point of error.

■ In his third point of error Durish claims the trial court erred in awarding $40,000 against Summit because the evidence was insufficient to support that amount. Durish claims the only damage resulting from Summit Title's actions is the $25,000 placed in escrow, which was not returned to the Zunigas. The jury found $40,000 would compensate Panan for its financial loss as a result of Summit's failure to handle the earnest money in accordance with the contract. Durish claims the amount should be remitted to $25,000.

Panan asserts the award of $40,000 is supported by Marco Zuniga's testimony. Zuniga testified that he incurred additional damage due to money spent traveling to the United States for this litigation, and early redemption of certificates of deposit to fund Panan's obligations under the earnest money contract. We find no evidence, however, that Zuniga incurred those expenses because of Summit's failure to return the $25,000 earnest money. The only liability issue answered against Summit asked whether Summit failed to act in accordance with the earnest money contract. The jury's affirmative answer to that issue warrants an award of $25,000 against Summit, but not $40,000. We sustain Durish's third point of error and suggest that Panan remit $15,000 to Durish as receiver for Summit Title.

■ In his fourth point of error the receiver claims the trial court erred in denying his plea in abatement. The receiver filed a plea in abatement claiming the Texas Insurance Code article 21.28(3) required all suits involving claims filed against the receiver, upon rejection, to be filed only in Travis County, and that the case be abated until he, as receiver, had rejected the claim and venue was moved to Travis County. This case, however, was filed before Summit Title was placed in receivership. The lawsuit was filed in 1983 and Summit Title was placed in permanent receivership on April 11, 1988. The provision of the Insurance Code under which Durish seeks relief applies to litigation filed after delinquency proceedings have been commenced and not to the lawsuits pending at that time. *Odiorne v. Skyhawk Aviation,* 733 S.W.2d 357, 359 (Tex.App.—El Paso 1987, writ ref'd). In his brief to this court, Durish attempts to assert other sections of article 21.28, but he has waived those provisions by failing to raise them in the trial court. *See PGP Gas Products, Inc. v. Fariss,* 620 S.W.2d 559, 560 (Tex.1981). The trial court

correctly declined to abate the suit. The receiver's fourth point of error should be overruled.

Because we find no evidence to support the award of attorney's fees, we modify the judgment to delete the award of attorney's fees to Panan. Further, because we have found the trial court's award of $40,000 is excessive, we suggest to Panan that it file a remittitur of $15,000. If such remittitur is filed within fifteen days of the date of the issuance of this opinion, we will reform the judgment of the trial court to reduce the award of $40,000 to $25,000 and affirm the remainder of the judgment. If the remittitur is not filed within the allotted time period, the judgment will be reversed and remanded to the trial court. *See* TEX.R.APP.P. 85(c).