**BAYLOR MEDICAL PLAZA SERVICES CORPORATION, d/b/a Baylor Medical Plaza Pharmacy, Appellant,**

v.

**Claude R. KIDD, Appellee.**

**No. 6–91–057–CV.**

Court of Appeals of Texas, Texarkana.

May 12, 1992.

On Motion for Rehearing July 7, 1992.

Cindy Butler White, Joann Wilkins, Burford & Ryburn, Dallas, for appellant.

Mark Lesher, Texarkana, Grant Kaiser, Onstad, Kaiser & Fontaine, Houston, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

GRANT, Justice.

Baylor Medical Plaza Services Corporation, d/b/a Baylor Medical Plaza Pharmacy, appeals from a judgment granting $150,000 damages to Claude Kidd in a tort action for personal injury.

Baylor Medical Plaza Services Corporation (Baylor) brings eleven points of error contending that the trial court erred by erroneously admitting certain evidence, by entering judgment on the jury verdict because there was no evidence or insufficient evidence to support the jury's findings on proximate cause, negligence, past damages, or future damages, and by refusing to submit a jury instruction on unavoidable accident, sole proximate cause, and new and independent cause.

Baylor bought bottles of benzaldehyde (bitter almond oil) from Humco. Almond oil is used in diluted form to provide a pleasant aroma in hand lotions that were mixed by Baylor. These bottles of benzaldehyde were delivered by TexPack. When the personnel at Baylor determined they had bought too many bottles, they mailed two of the bottles back to Humco through the United States mail. The bottles were broken in transit, and Claude Kidd, a postal worker, was called to mop up the concentrated almond oil from the floor. After inhaling the fumes, he said that he felt light-headed and collapsed. He was carried to the hospital for treatment, and diagnosed as having damage to his lungs and eyes. Kidd has a history of severe asthma, but claims no damage for any lung or eye injury. Kidd contends that he was physically harmed by exposure to these fumes, which he contends caused headaches, loss of hair, and acne. The jury awarded him past damages of $75,000 and future damages of $75,000 based upon its finding that Baylor was negligent.

Baylor first argues that the expert testimony of Steve Bryant, an employee of Humco, was improperly admitted because Kidd did not list Bryant as an expert witness during discovery. Baylor further argues that the harm of this error was compounded by the opinion testimony by Dr. Hueter (based solely upon Bryant's testimony at trial) that inhalation of the chemical could cause headaches. The trial court specifically stated that it found good cause to admit Bryant's testimony.

Baylor complains about the following testimony by Bryant:

Q ... Could you describe the effects on a person who inhales benzaldehyde?

A We're talking about nausia (sic), headache, vomiting, mucosal irritation, central nervous system depression.

In a response to interrogatories propounded to Humco (before Humco was dropped from the suit), Bryant had answered with virtually the same language as that quoted above.

■ A party has an affirmative duty to identify expert witnesses in response to an appropriate inquiry. The sanction for failing to comply with this rule is the automatic exclusion of the unidentified witness's testimony unless the proffering party demonstrates good cause for the admission. *E.F. Hutton & Co. v. Youngblood*, 741 S.W.2d 363, 364 (Tex.1987). The purpose of the rule is to encourage full discovery of the issues and facts prior to trial so that parties can make realistic assessments of their respective positions. The trial court has discretion in considering good cause exceptions. *Gee v. Liberty Mutual Fire Insurance Co.*, 765 S.W.2d 394 (Tex.1989).

■ Rule 166b of Texas Rules of Civil Procedure provides for discovery of witnesses having knowledge of relevant facts (generally referred to as fact witnesses) and expert witnesses. A fact witness should be limited to testimony about the specific facts of the case and should not be allowed to give expert opinions regarding scientific, technical, or other specialized knowledge.

■ Kidd does not contend that he listed Bryant as an expert witness, but he contends that good cause existed for Bryant to testify without his being listed. The trial court stated that it found good cause for Bryant to testify. The fact that a witness's identity is known to all parties does not justify a failure to supplement discovery. *Durish v. Panan Intern., N.V.*, 808 S.W.2d 175 (Tex.App.–Houston [14th Dist.] 1991, no writ). The absence of surprise, unfairness, or ambush does not alone satisfy the good-cause exception to the sanction of automatic exclusion. *Sharp v. Broadway Nat. Bank*, 784 S.W.2d 669, 671 (Tex.1990); Tex.R.Civ.P. 166b(2)(d), (e); Tex.R.Civ.P. 215(5). Kidd seeks to establish good cause for allowing this testimony on the basis (1) that Bryant was not retained by Kidd as an expert, (2) that Bryant was listed as a fact witness by Baylor, (3) that Bryant answered interrogatories propounded by Baylor to the codefendant Humco before Humco was dropped from the suit, and (4) that Kidd listed Bryant as a fact witness.

■ First, the rule does not exempt the listing of an expert witness on the basis that he is not a retained expert, and Baylor's discovery request was not limited to retained experts. The classification of a witness as an expert is not dependent on whether or not he is compensated for his time while serving as a witness.

■ Next, we shall look at whether the listing of a witness by another party to the suit justifies the witness being called by a party who did not list the witness. In the case of *American Cyanamid Co. v. Frankson*, 732 S.W.2d 648 (Tex.App.–Corpus Christi 1987, writ ref'd n.r.e.), one of the parties, without specifically designating any witnesses, answered that it reserved the right to call all experts designated by other parties in the case. The court disallowed any "catch-all" phrase that designates any other witnesses which any defendant might designate and announced that the well-settled rule of Texas discovery is that a party must identify its witnesses when called upon to do so. The designation of a witness by another party does not relieve a party from designating its own witnesses, and the fact that another party listed a witness is not good cause for failure of a party to designate its own witnesses. Furthermore, no party listed Bryant as an expert witness. The fact that Bryant answered interrogatories that were propounded to the codefendant Humco did not put Baylor on notice that Kidd intended to call Bryant as an expert witness.

We next address Kidd's contention that designation of this witness as a fact witness was sufficient to allow the testimony that was offered. The witness made a general statement of opinion that went beyond the specific facts of this case and constituted an expert opinion. A fact witness cannot testify to matters that will require him or her to give an expert opinion. *See Missouri–Kansas–Texas R. Co. v. Alvarez*, 703 S.W.2d 367, 371 (Tex.App.–Austin 1986, writ ref'd n.r.e.). We conclude that no good cause was shown for allowing this witness to testify as an expert on Kidd's behalf and that the trial court abused its discretion in allowing this testimony.

Kidd urges that even if this evidence should have been excluded, the evidence in question constituted only twelve words, and these twelve words were consistent with the answers by Humco to interrogatories. Whether these answers were consistent with interrogatories made by a third party is not at issue and does not make such answers automatically admissible in evidence.

Kidd contends that Bryant's testimony was merely cumulative of the testimony of other witnesses and is therefore not harmful. Kidd correctly contends that the specific objected-to testimony of Bryant constituted only a few words, but the number of words is not a decisive factor. Those few words have a very significant bearing on the outcome of this case because the testimony is not cumulative but rather forms the basis upon which the treating doctor relied in formulating his opinion of causation. Furthermore, it is the only evidence that might be considered to establish foreseeability. Thus, the improper admission of that evidence was reasonably calculated to cause and probably did cause rendition of an improper judgment.

We shall next address Baylor's points of error contending that there was no evidence or insufficient evidence that Baylor's packaging and labeling the product was a proximate cause of Kidd's injuries.

In reviewing no evidence points, the court considers only the evidence tending to support the finding, viewing it in the light most favorable to the finding, giving effect to all reasonable inferences therefrom, and disregarding all contrary and conflicting evidence. *Glover v. Texas General Indemnity Co.*, 619 S.W.2d 400 (Tex. 1981). Insufficient evidence points require that we consider and weigh all the evidence. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

In order to prove that Baylor's negligence was a proximate cause of injury, Kidd had to prove that Baylor's actions were a cause in fact of the injury and that the injury was reasonably foreseeable. *See Exxon Corp. v. Roberts*, 724 S.W.2d 863 (Tex.App.–Texarkana 1986, writ ref'd n.r.e.).

We shall first look at the requirement that there be reasonable foreseeability. An event is reasonably foreseeable if a person of ordinary intelligence should have anticipated dangers that his negligent act created for others. *Exxon Corp. v. Roberts*, 724 S.W.2d 863. To establish foreseeability, it is not necessary that the exact nature of the injury or the precise manner of its infliction should be foreseen, but the actor need only foresee injury of the same general character as the actual injury. *Brown v. Edwards Transfer Co.*, 764 S.W.2d 220 (Tex.1988).[1]

An actor is charged with knowledge of that which is a matter of common knowledge. *Texas General Utilities Co. v. Nixon*, 81 S.W.2d 250 (Tex.Civ.App.–Beaumont 1935, writ ref'd). However, the properties of benzaldehyde are not a matter of common knowledge. Furthermore, as a manufacturer of products containing benzaldehyde, Baylor is charged with the foreseeability of persons who possess the spe-

---

**1.** *See also Port Terminal Railroad Ass'n v. Ross*, 155 Tex. 447, 289 S.W.2d 220 (1956); and, *Commonwealth of Massachusetts v. Davis*, 140 Tex. 398, 168 S.W.2d 216 (1942), *cert. denied* 320 U.S. 210, 63 S.Ct. 1447, 87 L.Ed. 1848 (1943); *Boyd v. Fuel Distributors, Inc.*, 795 S.W.2d 266 (Tex. App.—Austin 1990, writ denied).

cial knowledge and ability of those involved in this field of endeavor. *See Mobil Pipe Line Co. v. Goodwin*, 492 S.W.2d 608 (Tex. Civ.App.–Houston [1st Dist.] 1972, writ ref'd n.r.e.). Testimony about the occurrence in question does not establish that at the time Baylor packed the bottles for shipping it was known either by the general public or by those who used the chemical in the manufacturing process that there was a danger from benzaldehyde or that those dealing with the product should have known of such a danger. There must be a reason to anticipate an injury, and there must be a probability of harm sufficiently serious that ordinary persons would take precautions to avoid it. *J.E. Stevens Funeral Home v. Busby*, 336 S.W.2d 812 (Tex.Civ.App.–Eastland 1960, no writ).

 A person or company is not responsible for a consequence which is merely possible, according to occasional experience, but a person or company is responsible for a consequence which is probable, according to ordinary and usual experience. *Garrett v. Waits Bus Lines*, 229 S.W.2d 381 (Tex.Civ.App.–Texarkana 1950, writ ref'd). To impose responsibility for negligence, it must have been foreseeable that this event or some similar event would result as a natural and probable consequence.

 The issue was not whether it was foreseeable that the bottles might break, but whether it was foreseeable that exposure to the substance would cause an injury. We look to the record to determine if there was any evidence to show that benzaldehyde was known to be a toxic substance, so that it was foreseeable that a person might be injured by exposure to the substance. The testimony from Bryant previously quoted would have established by implication that it was known that benzaldehyde could cause injury, but as we have previously ruled, this testimony was erroneously admitted into evidence.

Dr. Lowell Vereen testified that he had contacted the LSU Medical Center in Shreveport, Louisiana, to get some literature on benzaldehyde. He was then asked:

Q Do you have an opinion, Doctor Vereen, based upon reasonable medical probabilities, as to and after researching the literature having to do with benzaldehyde, whether or not these complaints in these diagnoses were associated with the ingestion of benzaldehyde?

. . . .

A Well, the headaches were a question that we never have actually resolved.

The doctor also read from his deposition his conclusion that the skin rash was a reaction to medication, not from the exposure to benzaldehyde.

Dr. John Hueter was asked if he had done any research into the area of benzaldehyde. He testified that he asked the area health education center to see if there was any references to the toxicity of the chemical, but none was located. He testified that there was no information that provided him any guidance one way or the other. Without Bryant's testimony, evidence on the foreseeability aspect of proximate cause is nonexistent.

 We look next at the evidence on proximate cause concerning cause in fact. Kidd testified that after inhaling the benzaldehyde he became ill almost instantly with dizziness, nausea, shortness of breath, and a sensation that something was hung in his throat. He passed out, and when he came to, he was still nauseated and felt like his head was going to explode. He was taken to the hospital where he remained four days and was treated for damages to his eyes and lungs.

Billy Upson, who worked with Kidd, testified that he also became nauseated and had headaches after inhaling the chemical fumes. He also testified that the chemical spill had eaten into the floor like an acid and that other employees besides Kidd complained of headaches and were examined at the hospital. The testimony showed that Kidd was not bothered with headaches until after he had inhaled the benzaldehyde. Such a sequence of events can establish cause in fact.

In another case involving chemical fumes and their effect upon an individual, the court held that lay testimony of the victim was adequate to prove causation. *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 733 (Tex.1984). In the *Morgan* case, the Supreme Court said that when the testimony establishes a sequence of events which provides a "strong, logical, traceable connection between the event and the condition" the proof of causation is sufficient.

After John Hueter had testified that he had been able to locate no references to the toxicity of benzaldehyde, counsel for Kidd asked the doctor to make an assumption based upon the testimony of Bryant.

Q Okay. Doctor, I want you to assume with me that a chemist, one who is employed by Humco, who makes benzaldehyde and is familiar with benzaldehyde, has testified that the inhalation of the vapors of benzaldehyde could cause headaches, sore throat, coughing or convulsion and paralysis. If you could assume with me further that Mr. Kidd has no medical history of headaches similar to what he is suffering from today, do you have an opinion, based on reasonable medical probability, on whether or not the chemical exposure of benzaldehyde that Butch Kidd was exposed to on September 19, 1985, caused the headaches he suffered from that day to the present day?

. . . .

A Well, based on that information, I think its possible that headaches . . .

. . . .

Q Go ahead, sir.

A Based on the information provided, I would think it possible that his headaches were due to the chemical exposure.

Dr. Hueter was asked if he would have changed his opinion (from the opinion that the benzaldehyde did not cause the headaches to the opinion that it did) if it had not been for the assumption posed to him based upon Bryant's testimony. He answered that he would not have and that he was not an expert on the chemical effects of benzaldehyde.

Baylor also contends that an expert may not rely on statements of third parties that are not properly in evidence, citing *Moore v. Grantham*, 599 S.W.2d 287, 289 (Tex.1980). This Supreme Court case predated the Civil Rules of Evidence. TEX.R.CIV.EVID. 703 effectively rejects the *Moore* rule. *See Liptak v. Pensabene*, 736 S.W.2d 953 (Tex.App.—Tyler 1987, no writ); H. WENDORF, D. SCHLUETER, & R. BARTON, TEXAS RULES OF EVIDENCE MANUAL VII–37 (3d ed. 1991). The rule specifically provides that inadmissible facts or data may be relied upon by an expert in forming an opinion if they are of the type reasonably relied upon by other experts to make opinions or draw inferences. Baylor also cites *Perkins v. Springstun*, 557 S.W.2d 343, 345 (Tex.Civ.App.–Austin 1977, writ ref'd n.r.e.), in which the court held that an expert opinion based upon erroneously admitted evidence lacks probative value. Again, whether the facts or data relied upon was admissible or not is no longer a deciding factor but rather Rule 703 is controlling. The reason for the inadmissibility of Bryant's testimony was not because it could not be relied upon by experts but rather because it violated a discovery procedure. We find that there is evidence of the cause in fact aspect of proximate cause.

To determine the sufficiency of the evidence on proximate cause, we are required to look at all the evidence, which includes the evidence that we have already examined in our discussion as well as the following additional evidence. On foreseeability, there was also testimony that the post office did not require any hazardous labeling in order to ship the product. The employee who mailed the product testified that she did not think it was hazardous because she and the other employees worked with it daily before the accident and continue to work with the product. There was testimony from employees who worked in the manufacturing process that they had never known anyone to have problems resulting from exposure to benzaldehyde.

On cause in fact, in addition to the evidence already reviewed, there was testimony from Dr. Arlis Loe that in his opinion Kidd's hair loss and skin rash were possi-

bly related to his exposure to benzaldehyde. He also testified that his rash was secondary to nerves and his hair loss was the result of normal balding. Kidd testified that his doctors told him that his skin problems might be caused by his medication but that he continued to take the medication in larger quantities than prescribed. Kidd also testified in his deposition that his skin problems were symptoms of long term effects of Agent Orange exposure. Looking at both foreseeability and cause in fact, we find that the evidence is insufficient to establish proximate cause.

If there had been sufficient evidence to establish that benzaldehyde was known or should have been known by Baylor to be toxic, then the jury had sufficient evidence from which to conclude that Baylor had been negligent in their manner of packaging and labeling the product. The jury could make such an inference without the necessity of expert testimony about how the substance should be packaged. The fact that the post office did not require special labeling or that the substance was put in the usual packaging does not preclude a finding of negligence.

■■ Baylor further argues that the trial court erred by admitting a summary of medical charges and bills prepared by Kidd's attorney because it lacked an adequate foundation. The summary purports to be a list of doctors and hospitals who had treated Kidd, followed by their charges.

Kidd's treating physician, Dr. Lowell Vereen, had reviewed the list and testified by deposition that the charges were reasonable and necessary.[2] Baylor objected to the admission of the exhibit on the basis that it was hearsay, that no proper foundation had been laid, and that the document had never been produced in response to interrogatories requesting the amounts of damages. The objections were overruled.

Texas Rules of Civil Evidence 1006 allows the contents of voluminous writings that are otherwise admissible but which cannot be conveniently examined in court to be presented in the form of a chart, summary, or calculation. This does not mean that a predicate is not required to show what the underlying documents are. In the present case, Dr. Vereen testified that these bills were represented to him as being the bills that Kidd incurred, but there was never any testimony that these bills were in fact incurred by Kidd. Without testimony that this summary was based upon bills incurred for Kidd's treatment for the injury in question, this exhibit was not admissible. The trial court erred in admitting this exhibit without that predicate being laid.

2. The testimony offered from Dr. Vereen's deposition was as follows:

Q Did I show you a compilation of medical charges incurred by Mr. Kidd, prior to this deposition today?

A Yes.

Q And did I represent to you that these charges were from the United States Department of Labor, for bills incurred by Mr. Kidd?

A Yes.

Q And did I show you a compilation of all the charges?

A Yes.

Q Let me label that Number Two. Doctor Vereen, can you identify what has been labeled as Plaintiff's Exhibit Number Two?

A It's a table with all the bills incurred medically while he was ...

Q Did I represent that that was a chart of the compilation of all the medical bills incurred by Mr. Kidd?

A Since September, 1985.

Q All right. And let me show you. I believe you were the primary doctor, were you not, of

Mr. Kidd from September 19, 1985, until January 23, '87?

A Yes.

....

Q And did you cause to have Mr. Kidd referred to Doctor Loe, Doctor Blankenship, Doctor Hueter, and did you treat him at the Texarkana Community Hospital, at Wadley, and did you cause him to be referred to Doctor Wyrick, and did you cause him to have pathological studies done at the Chappell–Joyce, radiology studies done at Texarkana Radiology Associates and Radiology Consultants and consultation with Doctor Waheed, and did you cause him to have prescriptions prescribed?

A Yes.

Q And, Doctor Vereen, I ask you to refer to Plaintiff's Exhibit Number Two, and are those charges and were those charges that were incurred by Mr. Kidd, were they necessary for the treatment furnished by you and/or anybody else at your direction?

A Yes.

■ Baylor next contends that the trial court erred by admitting evidence about physical pain or mental anguish in the past or the future. Baylor argues that Kidd's refusal to provide a meaningful answer in response to its interrogatory inquiring about this type of damage required the automatic exclusion of any evidence on these topics. Kidd had a duty to answer interrogatories and supplement them in a timely fashion or suffer the automatic exclusion of any such testimony. TEX. R.CIV.P. 166b, 215(5). The interrogatory at issue reads as follows:

> 9. Are you making claim in this lawsuit for physical pain and mental anguish? If so, provide the following information:
>
> a. State the total amount of money you are claiming for physical pain and/or mental anguish in the past, and state all factors relied upon by you in arriving at such amount.
>
> b. State the amount of money you are claiming for physical pain and/or mental anguish in the future, and state all factors relied upon by you in arriving at such amount.
>
> Answer: I will ask the jury to decide this.

■ This inquiry was to a matter more appropriately contained in pleadings. Kidd had requested damages for physical pain and mental anguish in his pleadings, and he was not required to have a personal opinion on that amount or to offer any testimony on a specific amount in order to obtain a verdict for damages for physical pain and mental anguish. Upon a proper exception being filed, he could have been required to plead with specificity the limits of his allegations.[3] If, however, the jury found an amount in excess of his pleadings, the trial court would have been bound to allow a postverdict amendment of his pleadings unless Baylor could show surprise or prejudice. *Greenhalgh v. Service Lloyds Insurance Co.*, 787 S.W.2d 938 (Tex.1990).

Kidd answered interrogatories detailing his alleged physical damage and specifying the treatment that one doctor expected would continue in the future. Baylor's interrogatory asked Kidd how much money he would seek for pain and mental anguish and the factors leading to those amounts. Although he declined to respond by informing Baylor of the total value that he claimed for pain and mental anguish, his answers to other interrogatories describe his physical injuries upon which the resultant pain and mental anguish claim would necessarily rely. In addition, during deposition, Kidd specified in detail the types of injury that he eventually relied upon at trial to show injury and its effect upon his life.

■ As suggested by counsel's reply to this interrogatory, the amount to be properly recovered for pain and mental anguish is a question uniquely in the purview of the jury, and such awards are made largely in its discretion. *Exxon Corp. v. Roberts*, 724 S.W.2d 863 (Tex.App.—Texarkana 1986, writ ref'd n.r.e.). There is no set formula for finding the value that should be awarded for enduring physical pain and mental anguish. Because personal injury damages are unliquidated and are not capable of measurement by any certain standard, the jury has broad discretion in fixing the amount of the award. *Kansas City Southern Ry. Co. v. Catanese*, 778 S.W.2d 114 (Tex.App.—Texarkana 1989, writ denied); *Phillips Petroleum Co. v. Burkett*, 337 S.W.2d 856 (Tex.Civ.App.—Fort Worth 1960, writ ref'd n.r.e.). It is elemental that a party must furnish such information as is available to the party in response to interrogatories. *See* TEX. R.CIV.P. 168. The requested answer is not an amount that must be specified by a plaintiff in his testimony.

Because the underlying injuries were detailed elsewhere in responses to discovery, the trial judge correctly admitted testimony about pain and mental anguish despite Kidd's failure to specify the dollar value of recovery of $500,000.

---

**3.** Kidd lumped all damages together in his petition and merely placed an upper limit upon his

his pain and anguish in response to Baylor's interrogatory. The point of error is overruled.

We do not address the remainder of the points of error because this holding is dispositive of the case.

The case is reversed and remanded for a new trial.

## ON MOTION FOR REHEARING

On motion for rehearing, Baylor complains that the court has not specifically addressed its contention that there is no evidence to support the jury's award of past and future damages. Baylor argued under these points of error that all of the evidence supporting the jury's award was improperly admitted; therefore, no evidence or insufficient evidence supported the jury award.

█ In our review of the legal and factual sufficiency of the evidence, we review the legal sufficiency of the evidence under the review standards of *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965), and the factual sufficiency under the review standards of *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951). Thus, we will first examine the record for any probative evidence to support the finding, ignoring all contrary evidence. If we find some probative evidence, we will test the factual sufficiency of that evidence by examining the entire record to determine whether the finding is clearly wrong and unjust.

█ As previously discussed, Kidd's testimony about his pain and suffering was properly admitted, thus constituting some evidence of damage. The jury issue did not specify the amount of award for each separate claim. As previously discussed, the jury has great discretion in determining the amount to be recovered for the infliction of pain and mental anguish, and could conceivably have awarded the entire amount on this basis. *Exxon Corp. v. Roberts*, 724 S.W.2d 863 (Tex.App.–Texarkana 1986, writ ref'd n.r.e.); *George Vaughan & Sons v. Dyess*, 323 S.W.2d 261 (Tex.Civ. App.–Texarkana 1959, writ dism'd).

There is, therefore, some evidence to support the jury's answer to the damage issues, and that evidence is sufficient to support the award.

The judgment remains reversed and remanded for a new trial on the merits.