In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00037-CR
______________________________


ROYCE LEE BLANKENSHIP, II, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 115th Judicial District Court
Upshur County, Texas
Trial Court No. 13,118


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Ross


MEMORANDUM OPINION

          Royce Lee Blankenship, II, appeals his conviction for felony driving while
intoxicated. See Tex. Pen. Code Ann. §§ 49.04, 49.09 (Vernon 2003). In his sole point
of error, Blankenship contends the trial court erred by allowing the State to read the
stipulation of prior offenses to the jury. We follow the Texas Court of Criminal Appeals'
decision in Hollen v. State, No. 1592-02, 2003 Tex. Crim. App. LEXIS 302 (Tex. Crim. App.
Sept. 10, 2003),


 and affirm the trial court's judgment.
I. Background
          The grand jury indicted Blankenship for driving while intoxicated. The indictment
further alleged Blankenship had been twice previously convicted of driving while
intoxicated, making Blankenship's current charge a felony. See Tex. Pen. Code Ann.
§ 49.09(b) (third degree felony enhancement). More specifically, the indictment alleged
Blankenship had been convicted in cause number 99-2020 in the County Court of Gregg
County, Texas, April 3, 1999, and in cause number 96-1667 in the County Court at Law
of Gregg County, Texas, May 10, 1996. Blankenship pled not guilty and proceeded to trial
before a jury. 
          On February 11, 2003, before trial began, Blankenship stipulated to the truth and
finality of the prior convictions as alleged in the indictment. The trial court then allowed the
State to read the stipulation to the jury, over Blankenship's objection. The jury found
Blankenship guilty as charged in the indictment, and the trial court sentenced Blankenship
to six years' confinement. 
II. Reading of the Stipulation During Guilt/Innocence
          Citing Hollen v. State, 87 S.W.3d 151 (Tex. App.‒Fort Worth 2002), rev'd, No.
1592-02, 2003 Tex. Crim. App. LEXIS 302 (Tex. Crim. App. Sept. 10, 2003), Blankenship
contends the trial court erred by permitting the State to read the stipulation of evidence to
the jury during the guilt/innocence portion of the trial. In Hollen, the appellant offered to
stipulate to the two prior (jurisdictional) convictions. Hollen, 2003 Tex. Crim. App. LEXIS
302, at *1. The state refrained from introducing any extrinsic evidence of the convictions,
but still sought to introduce the stipulation itself to meet the jurisdictional requirement of
Article 49.09 of the Texas Penal Code. Id. Hollen objected to permitting the prosecutor
to read the stipulation before the jury, claiming the exclusion of extrinsic evidence of the
convictions was not enough; the state should be prohibited from mentioning any of the
prior jurisdictional convictions, including reference to Hollen's stipulation, during the
guilt/innocence stage of the trial. Id. at *1-2. The state read the stipulation to the jury, and
Hollen was convicted. The Fort Worth Court of Appeals reversed Hollen's conviction,
holding the trial court erred by permitting the state to read the stipulation to the jury and
such error was harmful. Hollen, 87 S.W.3d at 158-59. 
          On petition for discretionary review, the Texas Court of Criminal Appeals reversed. 
Hollen, 2003 Tex. Crim. App. LEXIS 302, at *12. The court reviewed its holding in Tamez
v. State, 11 S.W.3d 198 (Tex. Crim. App. 2000), and noted the court had previously held
"prior convictions beyond the two jurisdictional elements should not be read or proven
during the State's case-in-chief." Hollen, 2003 Tex. Crim. App. LEXIS 302, at *6 (quoting
Tamez, 11 S.W.3d at 202-03).
          The court then reviewed its opinion in Robles v. State, 85 S.W.3d 211 (Tex. Crim.
App. 2002). Hollen, 2003 Tex. Crim. App. LEXIS 302. In Robles, the appellant offered to
stipulate to the existence of the two prior convictions and requested the trial court prevent
the state from introducing evidence of those convictions. His request was denied. The
Texas Court of Criminal Appeals held that the stipulation should have been approved and
the state prevented from entering into evidence the judgments of the jurisdictional prior
convictions. The court noted that each judgment was for a DWI-third offense, and the jury
could have discerned from those judgments that the present trial was for Robles' fifth
alcohol-related offense. However, the court (in Hollen) then went on to distinguish Robles
on the basis that "Robles did not address whether the jury may be informed of the
stipulation or whether the stipulation itself may be admitted into evidence." Id. at *8-9. The
court then reaffirmed its prior holding that "the two prior convictions are jurisdictional
elements that must be proven to obtain a conviction for the offense of felony DWI" and
held it was not error to inform the jury of the stipulation. Id. at *9 (citing Old Chief v. United
States, 519 U.S. 172, 186 & 191 (1997); Hernandez v. State, 109 S.W.3d 491, 495 (Tex.
Crim. App. 2003); and Barfield v. State, 64 S.W.3d 446, 448-49 (Tex. Crim. App. 2001)). 
          In this case, proof of Blankenship's prior convictions was necessary to establish the
jurisdictional elements of the crime. The trial court therefore did not err by permitting the
State to read the stipulation regarding Blankenship's prior jurisdictional convictions into
evidence before the jury. 
          We affirm the trial court's judgment.


                                                                           Donald R. Ross                                                                                                       Justice

Date Submitted:      October 28, 2003
Date Decided:         October 29, 2003

Do Not Publish



inion of the fact-finder, and courts in most instances have been reluctant to disturb the findings of a trial court or jury
on such matters when there is any evidence to support the findings. George C. Vaughan & Sons v.
Dyess, 323 S.W.2d 261 (Tex. Civ. App.—Texarkana 1959, writ dism'd); see also Baylor Med. Plaza
Servs. Corp. v. Kidd, 834 S.W.2d 69, 78 (Tex. App.—Texarkana 1992, writ denied); Exxon Corp.
v. Roberts, 724 S.W.2d 863 (Tex. App.—Texarkana 1986, writ ref'd n.r.e.). 
            Conley's first point of error charges the evidence was legally and factually insufficient to
sustain the jury's award of damages for assault.


 Conley concedes the sufficiency of the evidence
to support a finding of assault, and challenges only the sufficiency of the evidence to support the
damages for assault. Conley argues that Driver did not present evidence of mental anguish, and thus,
there was no evidence to support the jury's award of damages.
            Driver gave detailed and copious testimony. Driver testified that the first physical contact
which she regarded as inappropriate involved Conley coming up from behind her in the kitchen of
their home, hugging her, and rubbing her stomach; his hand gradually going "south" beneath her
underwear. She also testified that Conley forced her to engage in sexual intercourse with him, that
it was very painful, and that he inserted his finger in her anus. She testified it was common for the
two to go to a Sonic restaurant, and on the way for Driver to perform oral sex on Conley. Conley
made her engage in sexual contact at least one or two times a month. 
            There is a significant amount of evidence to support damages for assault. After the first time
Conley touched Driver sexually, she felt betrayed and went to her room and cried. As a result,
Driver attempted suicide twice—the first time at age thirteen or fourteen, by cutting her wrists, and
again around age fifteen, by taking pills. She was distressed when her mother did not believe her
about the sexual abuse by Conley. Driver believes her recovery from the sexual abuse will be a
lifelong process. Driver testified, "It hurts me to think that my mom is still married to him today." 
This has affected how Driver relates to men—she is very distrusting and does not believe them. 
When Driver found that Conley was obtaining or trying to obtain custody of his granddaughters, she
could not sleep at night knowing someone else might live through the nightmare she had been
through. Though there were times she could not emotionally handle the abuse, she tried not to let
that show on the outside. The first time Driver told school counselor, Donna Fleming, about the
sexual abuse, Driver was "tearful and upset." There was a "lot of sadness and emotion [and it]
seemed to really hurt" Driver that her mother did not believe her about the allegations of sexual
abuse. In later counseling sessions, Driver began to divulge more details and was very upset. Driver
said she was extremely upset, felt dirty, did not think she could ever have a normal sex life, and was
taking it very hard because she was thinking of marrying her boyfriend. It took eight counseling
sessions before Driver started talking about the sexual abuse, because there is "a lot of secrecy
involved with incest, a lot of shame." In the counseling session with Driver's parents and Driver,
Driver sat between her parents on the couch "like she was trying to make herself real small and
invisible and didn't want to be there." Driver exhibited relief when Fleming told her "you can't be
around" Conley. 
            As cited above, there is a tremendous amount of discretion given to the jury on the amount
of damages. There is evidence of a probative nature, and thus legally sufficient evidence, to support
the jury's award of damages.
            While there is evidence to the contrary, Conley's evidence is essentially directed at
challenging whether the sexual assault happened at all, not the damages for the assault. There is
legally and factually sufficient evidence to support the jury's determination of damages for assault.
(2)       Sufficient Evidence Supports the Damages for Intentional Infliction of Emotional Distress 

            Conley complains the evidence was legally and factually insufficient to support the jury's
award of damages for Conley's intentional infliction of emotional distress on Driver. Conley argues
that intentional infliction of emotional distress requires a showing that the emotional distress at issue
is so severe no reasonable person could be expected to endure it. See GTE Southwest, Inc. v. Bruce,
998 S.W.2d 605, 618 (Tex. 1999); see also Restatement (Second) Of Torts § 46 (1965). As
with the first point of error, Conley concedes the sufficiency of the evidence to establish the tort of
intentional infliction of emotional distress.


 He challenges the amount of damages, which, again,
is within the jury's discretion.
            Driver testified to nonassaultive behavior by Conley which caused her emotional and
psychological harm. She testified that she found a video camera in the hotel room she shared with
Conley, that he told her he had videotaped their sexual acts of the night before, and that he
specifically told her he did this to "destroy [her] reputation, [her] future, [her]marriage and . . .
relationships." Conley told Driver that the videotape would be his "ace in the hole" should she report
the abuse to her school counselor. Conley blamed Driver for ruining his life and marriage after she
reported the history of abuse and said he would do "everything in [his] power to ruin hers." This
conduct especially evinces Conley's intent to control or harm his stepdaughter.
            Conley told Driver he had videotaped previous sexual encounters, including one where
Driver had fluid dripping down her leg. He told her it was because one day they would not have
their special relationship, and he wanted to remember. Conley later said he would ruin Driver's
reputation by showing the videotape to future boyfriends or husbands; and said he would send it to
her school, her current boyfriend and his family, and to her mother. Fleming said that Driver was
very upset and very worried that Conley had threatened her with these videotapes, and that Driver
wanted help. Driver acted like she expected videotapes to show up at her dormitory any day. Conley
threatened to mail them to various people, demonstrating a pattern of trying to control Driver by
these threats. Driver was afraid of Conley making good on his threats to expose her and to withhold
financial support. Also, when Driver would refuse Conley sex, he would cry and accuse her of not
wanting their "special relationship." When she began dating a boy in high school, Conley acted like
a jealous boyfriend. There is legally sufficient evidence to support damages for intentional infliction
of emotional distress.
            As with the evidence relative to the assault damages, the minimal contrary evidence
challenged whether the events occurred, not the damages sustained as a result of his intentional
infliction of emotional distress.
            There is sufficient evidence, legally and factually, to support the jury's award of damages for
intentional infliction of emotional distress.
(3)       There Was No Error in Awarding Damages for Both
            Conley's third point of error complains the trial court erred in entering judgment for damages
for liability on the two causes of action, which he claims were mutually exclusive.
            Intentional infliction of emotional distress is a "gap-filler"


 tort, allowing recovery in the rare
instances in which a defendant intentionally inflicts severe emotional distress in an unusual manner
so the victim has no other recognized theory of redress. Hoffman La-Roche, Inc. v. Zeltwanger, 144
S.W.3d 438 (Tex. 2004). The tort supplements existing forms of recovery and therefore provides
a cause of action for egregious conduct that might otherwise go unremedied. Id. Intentional
infliction of emotional distress is not available as a cause of action unless the actor intended to cause
severe emotional distress, or such distress is a primary risk of the conduct. If conduct is intended
or primarily likely to produce severe emotional distress, Section 46 of the Restatement of Torts is
the applicable theory of recovery, even if the actor's conduct also produces some other harm. 
Johnson, 985 S.W.2d at 68. Properly limited, the tort is not available when the actor "'intends to
invade some other legally protected interest,' even if emotional distress results." Zeltwanger, 144
S.W.3d at 447. Even if the evidence of intentional infliction of emotional distress is independent
of that necessary to establish another tort claim, the extraneous actions must be "extreme or
outrageous as a matter of law." Id. "[E]xcept in circumstances bordering on serious criminal acts,"
even heinous acts "will rarely have merit as intentional infliction claims." Jackson, 157 S.W.3d at
818 (emphasis added).
            Though Conley's counsel admitted in oral argument that the tort of intentional infliction of
emotional distress had been committed, any damages for that tort must be shown to have arisen from
the tort, within the framework for that tort as set out by the Texas Supreme Court. We conclude 
Driver has made such a showing. The evidence of damages detailed above qualifies under the above
authority because the evidence supports findings that (a) the damages for intentional infliction of
emotional distress came from Conley's actions, which were separate and apart from his assaultive
behavior; (b) those separate actions intentionally inflicted emotional distress on Driver or were likely
to produce that result in her; and (c) those separate actions were extreme and outrageous as a matter
of law, either being or bordering on criminal behavior.


 Therefore, the damages for intentional
infliction of emotional distress were recoverable in addition to the damages for assault under the
facts of this case.
            We affirm the judgment of the trial court.
 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          October 5, 2005
Date Decided:             October 25, 2005