Gilbert H. **OLVEDA** and Brendalee Olveda–North, Individually and as Representatives of the Estate of Frieda Hernandez, Deceased, Petitioners,

v.

Rene A. **SEPULVEDA**, M.D., Respondent.

No. 04–0707.

Supreme Court of Texas.

March 3, 2006.

---

Dennis C. Peery, Tyler & Peery, Thomas H. Crofts Jr., Jacqueline M. Stroh, Crofts & Callaway, P.C., San Antonio, for petitioner.

Robert R. Biechlin Jr., Edward C. Mainz Jr., Rebecca Ann Copeland, Thornton Summers Biechlin Dunham & Brown, L.C., San Antonio, for respondent.

Justice O'NEILL, dissenting.

The court of appeals held that the expert report filed in this case was insufficient to allow the plaintiffs' survivorship and wrongful-death claims to proceed under former Article 4590i, the Texas Medical Liability and Insurance Improvement Act ("MLIIA").[1] 141 S.W.3d 679. Because I believe the report was sufficient to support the survivorship claim, I dissent from the Court's denial of the plaintiffs' petition for review.

Frieda Hernandez was seven-and-a-half months pregnant and complaining of severe abdominal pain when she checked in to St. Luke's Hospital. Dr. Kuhl, an obstetrician, Dr. Sepulveda, a urologist, and Dr. Ramirez, an anesthesiologist, treated her during her hospitalization. Kuhl, assisted by Sepulveda and Ramirez, performed a cystoscopy (placement of a ureteral stent to relieve kidney obstruction) without electronic fetal monitoring. Hernandez's baby died during the procedure and was later delivered by caesarian section. Shortly thereafter, Hernandez suffered a cardiac arrest, and died three days later from multiple organ failure caused by preeclampsia[2] and HELLP Syndrome.[3]

The Olvedas, Hernandez's children, sued the health-care providers for survivorship and wrongful-death damages, alleging that had the doctors complied with the standard of care, they would have diagnosed and treated Hernandez's condition in time to save her and her baby. The Olvedas filed an expert report prepared by Dr. Suresh, an obstetric anesthesiologist, which addressed Sepulveda's alleged negligence. Sepulveda filed a motion to dismiss, arguing that Dr. Suresh was not a qualified expert under former Article 4590i.

The trial court dismissed the claims against Sepulveda and granted his motion to sever. A divided court of appeals affirmed, holding that Dr. Suresh, an anesthesiologist, was not qualified to testify about the standard of care applicable to urologists, and that in any event the expert report failed to establish a causal relation between the alleged breach of the standard of care and the injury. 141 S.W.3d at 683. The Olvedas petitioned this Court for review.

1. Act of May 30, 1977, 65th Leg., R.S., ch. 817, 1977 Tex. Gen. Laws 2039 (former TEX. REV. CIV. STAT. art. 4590i), *repealed by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884. Article 4590i has been replaced by House Bill 4 (now Chapter 74 of the Texas Civil Practice and Remedies Code), which governs health care liability claims commenced on or after September 1, 2003.

2. "[A] toxic condition developing in late pregnancy that is characterized by a sudden rise in blood pressure, excessive gain in weight, generalized edema, albuminuria, severe headache, and visual disturbances." WEBSTER'S THIRD INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 1786 (1961).

3. Acronym for "*h*emolysis elevated *l*iver enzymes, and *l*ow *p*latelet count: a serious disorder of pregnancy of unknown etiology that usually occurs between the 23rd and 39th weeks, that is characterized by a great reduction in the number of platelets per cubic millimeter, by hemolysis, by abnormal liver function tests, and sometimes by hypertension, and that in the most severe cases requires delivery of the fetus before term." Medline Plus Medical Dictionary, http://www.nlm.nih.gov/medlineplus/ mplusmdictionary.html (last visited March 1, 2006).

Section 13.01 of former article 4590i requires plaintiffs in suits involving health-care-liability claims to submit an expert report. Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 13.01, 1995 Tex. Gen. Laws 985, 986 (former TEX. REV. CIV. STAT. art. 4590i, § 13.01), *repealed by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884. Rule 702 of the Texas Rules of Evidence requires that an expert be qualified "by knowledge, skill, experience, training, or education" regarding the issue. TEX. R. EVID. 702. The MLIIA requires an expert who:

> (1) is practicing medicine at the time such testimony is given or was practicing medicine at the time the claim arose;
> (2) has knowledge of accepted standards of medical care for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and
> (3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of medical care.

Act of May 5, 1995, 77th Leg., R.S., ch. 140, § 14.01(a), 1995 Tex. Gen. Laws 985, 988 (repealed 2003). We held in *Broders v. Heise*, that "an expert of a different school [may] testify so long as the 'subject of inquiry is common to and equally recognized and developed' in both fields." 924 S.W.2d 148, 152 (Tex.1996) (quoting *Hart v. Van Zandt*, 399 S.W.2d 791, 797 (Tex. 1965)); *see also Roberts v. Williamson*, 111 S.W.3d 113, 120–21 (Tex.2003) (reiterating that an expert demonstrate "knowledge, skill, experience, training, or education" to testify regarding the specific issue before the court). In the medical context, "[t]here are certain standards universally regarded as ordinary medical standards beneath which no common or community standards may fall." *Reed v. Granbury Hosp. Corp.*, 117 S.W.3d 404, 409 (Tex.App.—Ft. Worth 2003, no pet.) (citing *Webb v. Jorns*, 488 S.W.2d 407, 411 (Tex.1972)). These standards apply across multiple schools of practice and to any physician. *Id.*

Dr. Suresh is a board-certified anesthesiologist. She has been in practice for thirty-five years as an obstetric anesthesiologist, has won awards for her obstetrical research, and holds tenured professorships at Baylor and the University of Texas Medical Schools. Dr. Suresh's report states in part:

> On reviewing the records, there was no evidence of documentation of history and physical examination, assessment or plan of action by Dr. Sepulveda. A reasonable expectation of any physician/surgeon who is planning a nonobstetric operative procedure on a parturient in the third trimester is to evaluate, assess and document a history, physical examination, and rationalize the plan of action. Further it is the responsibility of all physicians involved in the intraoperative care of the parturient to ensure both maternal and fetal well being during the entire intraoperative procedure.

Dr. Suresh did not address the standard of care particularly applicable to Dr. Sepulveda's specialty, urology; rather, she addressed the general standard of care applicable to all physicians and surgeons performing a procedure on a patient in the third trimester of pregnancy. She was therefore properly qualified as an expert in this case.

Dr. Suresh's report also met the MLIIA's requirement that the report set forth "the manner in which the care ... failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 13.01(r)(6), 1995 Tex. Gen. Laws 985, 986 (repealed 2003). An expert report "need not marshal all the plaintiff's proof," but must represent "a good-faith effort to comply with the statutory definition of an ex-

pert report" in the MLIIA. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (citations omitted). A good-faith effort must (1) inform the defendant of the specific conduct called into question, and (2) provide a basis for the trial court to conclude that the claims have merit. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 879 (Tex.2001). The expert report provided in part:

> In a parturient patient who is in the third trimester, having contractions q 3–5 minutes with fetal decelerations, the standard of care would have been to monitor uterine contractions and have continuous recording of [the fetal heart rate] by a qualified individual during the perianesthetic and perioperative period and to have arrangements for a stat ceserian section if the need arose.
>
> . . .
>
> [I]t is the responsibility of all physicians involved in the intraoperative care of the parturient to ensure both maternal and fetal well being during the entire intraoperative procedure.
>
> . . .
>
> Further failure on the part of Dr. Kuhl, Dr. Ramirez, and Dr. Sepulveda to appropriately monitor the uterine contractions and the [fetal heart rate] resulted in adverse fetal outcome.

Although this report establishes no causal connection between Sepulveda's conduct and Hernandez's death from preeclampsia and HELLP Syndrome, it is not similarly deficient with respect to the survival action. The expert's report identifies how Sepulveda's conduct failed to meet the applicable standard of care and purports to connect that conduct to the baby's death, stating that Dr. Sepulveda's failure to monitor uterine contractions and the fetal heart rate resulted in the baby's death. I would conclude that the report was sufficient under the MLIIA to support the survival action, and accordingly dissent from the Court's denial of the plaintiffs' petition.