**Janice McDANIEL and Patrick McDaniel, Appellants,**

v.

**SPECTRUM HEALTHCARE RESOURCES, INC. and Michael Sims, Appellees.**

No. 04–06–00185–CV.

Court of Appeals of Texas, San Antonio.

Aug. 22, 2007.

Jeffrey C. Anderson, Jessica L. Lambert, Law Office of Jeffrey C. Anderson, San Antonio, for appellants.

Robert R. Biechlin, Jr., Richard C. Harrist, Thornton, Biechlin, Segrato, Reynolds & Guerra, L.C., San Antonio, for appellees.

Sitting: ALMA L. LÓPEZ, Chief Justice, CATHERINE STONE, Justice, KAREN ANGELINI, Justice, SANDEE BRYAN MARION, Justice, PHYLIS J. SPEEDLIN, Justice, REBECCA SIMMONS, Justice, STEVEN C. HILBIG, Justice, dissenting without opinion.

## OPINION

Opinion by PHYLIS J. SPEEDLIN, Justice.

The controlling legal issue presented in this appeal is whether an Agreed Special Setting and Docket Control Order incorporated a written agreement extending the date for serving an expert report under section 74.351(a) of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a) (Vernon Supp.2006). Because we hold that the

docket control order includes within it an unambiguous agreement that extended the date, we reverse the trial court's order and remand the cause to the trial court for further proceedings.

## BACKGROUND

Janice McDaniel was receiving physical therapy at Brooke Army Medical Center for a "frozen shoulder" when she attempted to step off a machine and fell, breaking her pelvis. Janice's physical therapist was Michael Sims, who was employed by Spectrum Healthcare Resources, Inc., which was apparently hired by Foundation Health Federal Services. Foundation was retained by the United States to employ medical personnel to work at Brooke Army Medical Center.

On April 15, 2004, Janice and Patrick McDaniel filed suit in federal court against Spectrum and Sims for negligence and medical negligence and against the United States of America for negligence. The federal court signed an agreed scheduling order on July 2, 2004, that required experts to be identified by April 22, 2005, under the Federal Rules of Civil Procedure. *See* FED. R. CIV. P. 26(a)(2)(B) (party must provide a written report of a witness who is retained or specifically employed to provide expert testimony in a case). Before experts were identified pursuant to the federal scheduling order, Spectrum and Sims filed a Motion to Dismiss the McDaniels' claims on August 30, 2004, asserting that the McDaniels failed to timely serve the expert report required by section 74.351 of the Texas Civil Practice and Remedies Code and that the agreed scheduling order entered by the federal court did not extend the deadline.

*See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351 (Vernon Supp.2006). Also pending before the court was a motion for summary judgment filed by the United States asserting that it was not liable for the negligence, if any, of Spectrum and Sims because they were independent contractors.

On November 16, 2004, the federal court issued an opinion granting summary judgment in favor of the United States, but denying the motion to dismiss filed by Spectrum and Sims. Because granting summary judgment in favor of the United States "destroyed" the basis for the federal court's original jurisdiction, the federal court exercised its discretion to *sua sponte* dismiss the case without prejudice to refiling in state court.

The McDaniels refiled their claims against Spectrum and Sims in state court on May 25, 2005. Thereafter, on July 15, 2005, the parties entered into an Agreed Special Setting and Docket Control Order. Pursuant to the docket control deadlines, the McDaniels filed a Designation of Expert Witnesses and attached an expert report and curriculum vitae of their expert on January 11, 2006. On February 2, 2006, Spectrum and Sims filed a motion to dismiss asserting that the McDaniels failed to timely serve their section 74.351 expert report.[1] After a response was filed by the McDaniels and a reply was filed by Spectrum and Sims, the trial court conducted a hearing on the motion and entered an order dismissing the McDaniels' claims with prejudice.

## DISCUSSION

■ We review a trial court's order granting a motion to dismiss based on the

---

1. We note that Spectrum and Sims filed their motion to dismiss in federal court 17 days after the alleged 120 day deadline had passed, but they waited almost 4–1/2 months after the alleged deadline in state court (September 19, 2005) had passed before filing their motion to dismiss and then only after they had received the McDaniels' expert report.

failure to timely file a section 74.351 expert report under an abuse of discretion standard. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 875 (Tex.2001); *Lopez v. Montemayor,* 131 S.W.3d 54, 58 (Tex.App.-San Antonio 2003, pet. denied). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *Bowie Mem. Hosp. v. Wright,* 79 S.W.3d 48, 52 (Tex. 2002); *Lopez,* 131 S.W.3d at 58.

"In a health care liability claim, a claimant shall, not later than the 120th day after the date the claim was filed, serve on each party or the party's attorney one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted."[2] Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 875. The date for serving the report may be extended by written agreement of the affected parties. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (Vernon Supp.2006).

The issue in this appeal is whether the July 15, 2005 Agreed Special Setting and Docket Control Order incorporated a written agreement of the parties that extended the date for serving the expert report. *See id.* We apply contract principles in determining whether the parties entered into an agreement to extend the deadline. *See Emeritus Corp. v. Highsmith,* 211 S.W.3d 321, 329 (Tex.App.-San Antonio 2006, pet. denied). When a contract is not ambiguous, the construction of the written instrument is a question of law for the court that is reviewed *de novo. MCI Telecommunications Corp. v. Texas Utilities Elec. Co.,* 995 S.W.2d 647, 650–51

(Tex.1999); *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983). Whether a contract is ambiguous is a question of law that must be decided by examining the contract as a whole in light of the circumstances present when the contract was entered. *See Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.,* 907 S.W.2d 517, 520 (Tex.1995); *Sanchez v. Duke Energy Field Services, Inc.,* No. 04–05–00926–CV, 2006 WL 2546365, at *2 (Tex.App.-San Antonio Sept. 6, 2006, pet. denied); *see also Wagner & Brown v. E.W. Moran Drilling Co.,* 702 S.W.2d 760, 769 (Tex.App.-Fort Worth 1986, no writ) (court must determine from expressions used in a written contract whether there has been a meeting of the minds). If a written contract is worded so that it can be given a definite or certain legal meaning, then it is unambiguous. *Nat'l Union Fire Ins. Co.,* 907 S.W.2d at 520; *Coker,* 650 S.W.2d at 393. An ambiguity does not arise simply because the parties offer forceful and diametrically opposing interpretations. *Lopez v. Munoz, Hockema & Reed, L.L.P.,* 22 S.W.3d 857, 861 (Tex. 2000); *Sanchez,* 2006 WL 2546365, at *2. Rather, a contract is ambiguous only if two or more reasonable interpretations are genuinely possible after application of the pertinent rules of interpretation to the face of the instrument. *Sanchez,* 2006 WL 2546365, at *2.

In this case, the parties' written agreement, as reflected in the docket control order, can be given a definite and certain meaning as a matter of law. The Agreed Special Setting and Docket Control Order provides in pertinent part:

On this the 6th day of July, 2005, came to be heard, all parties to this cause of action who have agreed that the

---

2. Section 74.351(a) was amended in 2005 to substitute "the original petition was filed" for "the claim was filed;" however, the amendment applies only to a cause of action that accrues on or after September 1, 2005. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a) (Vernon Supp.2006).

following dates of the Docket Control Order should be entered. It is therefore, ORDERED, ADJUDGED, AND DECREED as follows:

1. Plaintiffs will designate all expert witnesses that they intend to call at the trial of this case, live or by deposition, and shall provide a written report and curriculum vitae of all retained experts in this case on or before *January 11, 2006;*

2. Defendant is to designate all expert witnesses it intends to call at the trial of this case, live or by deposition, and shall provide a written report and curriculum vitae of all retained experts in this case on or before *February 24, 2006;*

\*    \*    \*    \*    \*    \*

It is further ORDERED to the extent these deadlines may be in conflict with deadlines set by rule or statute, the deadlines established by this Docket Control Order shall take precedence.

It is further ORDERED that the parties shall conduct discovery as soon as practicable, notwithstanding the limiting provisions found in Chapter 74 of the Texas Civil Practice and Remedies Code.

\*    \*    \*    \*    \*    \*

■ Based on the language in the agreed order, the parties initially agreed in paragraph one that January 11, 2006, would be the deadline for the McDaniels to: (1) "designate all expert witnesses that they intended to call at trial" and (2) "provide a written report and curriculum vitae of all retained experts in this case." We read this as imposing two separate requirements. The first requirement mandates disclosure of "all expert witnesses" that may be called to testify at trial which includes both retained and non-retained experts such as treating physicians. *See Baylor Med. Plaza Servs. Corp. v. Kidd,* 834 S.W.2d 69, 73 (Tex.App.-Texarkana 1992, writ denied) (retained expert is an expert who is compensated for his services); *see also In re Harvest Communities of Houston, Inc.,* 88 S.W.3d 343, 348 (Tex.App.-San Antonio 2002, orig. proceeding) (noting treating physicians are non-retained experts). The crux of this case deals with the second requirement contained within paragraph one, the requirement of providing "a written report and curriculum vitae of *all retained experts* in this case." Since an expert who prepares a section 74.351 report is generally a retained expert, we must determine whether the parties intended for the January 11, 2006, deadline to apply to the section 74.351 expert report. In order to make this determination, we consider and give effect to each part of the agreed docket control order. *Forbau v. Aetna Life Ins. Co.,* 876 S.W.2d 132, 133–34 (Tex.1994).[3]

---

3. We note that the dissent reads the language of paragraph one differently than the majority. In essence, the dissent reads the second requirement as necessarily limited to testifying experts, therefore excluding a section 74.351 expert report. We respectfully disagree. First, the language used by the parties does not impose such a limitation. The parties did not state, as the dissent suggests, "provide a written report and curriculum vitae of all retained experts in this case *that you intend to call at trial.*" Second, the dissent reasons paragraph one has to be limited to

"testifying experts" because otherwise it "results in the requirement to produce reports and curricula vitae of all 'retained' experts including any retained 'consulting only' experts." However, under the Texas Rules of Civil Procedure, "[t]he identity, mental impressions and opinions of a consulting expert whose mental impressions and opinions have not been reviewed by a testifying expert **are not discoverable.**" Tex R. Civ. P. 192.3(e) (emphasis added). Unlike the report required under section 74.351 or unlike a report required for a testifying expert, a plaintiff is not

■ In deciding whether the agreed docket control order in the instant case incorporated an agreement to extend the deadline for the 74.351 expert report, we first note that the statute allows such an agreement but does not mandate a specific format other than the agreement must be in writing. TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a) (Vernon Supp.2006) ("The date for serving the report may be extended by written agreement of the affected parties."). The dissent states that in order to be valid the written agreement must contain a "clear reference" to section 74.351. We respectfully disagree. Certainly, an express mention of the statute would remove all doubt about the parties' intent but the statute does not require it. Accordingly, we must look to the agreement as a whole to ascertain the parties' intent.

Here the parties expressly agreed that a written report and curriculum vitae of all of Plaintiff's retained experts would be due on or before January 11, 2006. Then, in a separate paragraph, the parties agreed the deadlines established within the agreed order would trump any other rule or statute that was in conflict with the order, stating, "to the extent these deadlines may be in conflict with the deadlines set by rule or *statute,* the deadlines established by this Docket Control Order shall take precedence." (emphasis added). Spectrum and Sims have not cited this court to any "statute" this section of the

agreement could possibly have intended to reference other than section 74.351. The dissenting opinion contends that the reference to "statute" may have been a reference to section 74.352 of the Texas Civil Practice and Remedies Code, asserting that the deadlines in that section would conflict with the deadlines contained in the docket control order. We disagree. The deadlines in section 74.352 govern the service of responses to the standard set of interrogatories and standard set of requests for production of documents and things promulgated by the Health Care Liability Discovery Panel. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.352 (Vernon 2005). The dissenting opinion does not explain how these deadlines could be in conflict with the docket control order deadlines, especially considering that the standard sets of discovery referenced in section 74.352 have never been promulgated by the Health Care Liability Discovery Panel. If this court were to decide that the docket control order did not incorporate an agreement to extend the section 74.351 deadline, we would render an entire provision within the agreed order meaningless which would ignore a pertinent rule of contract interpretation. *See Sanchez,* 2006 WL 2546365, at *2 (noting court must apply pertinent rules of interpretation in determining whether contract is ambiguous).

Furthermore, the docket control order expressly permitted the parties to conduct

required to provide a consulting expert's report absent a waiver of the privilege. *See In re City of Georgetown,* 53 S.W.3d 328, 337 (Tex.2001) (consulting expert report only discoverable if privilege has been waived); *Weatherford Int'l, Inc. v. Baytech, Inc.,* No. 08–00–00372–CV, 2001 WL 735753, at *6 (Tex.App.-El Paso June 29, 2001, orig. proceeding [mand. denied] ) (consulting expert immune from discovery unless party seeking information establishes one of three exceptions). The agreed docket control order is

focused on the *deadline* or *timing* for the plaintiff to provide the reports the plaintiff is required to provide and is not intended to waive the consulting expert privilege. Third, and most importantly, by separately attacking each paragraph of the report in isolation, the dissent fails to give any consideration to the report as a whole and, thereby, fails to give effect to each paragraph of the agreed docket control order in context. *Forbau,* 876 S.W.2d at 133–34.

discovery "notwithstanding the limiting provisions found in Chapter 74 of the Texas Civil Practice and Remedies Code" which would otherwise have limited discovery until the section 74.351 expert report was filed. Having expressly referenced chapter 74, the parties were cognizant of the limitations and deadlines established by that statutory provision. By expressly stating that the deadlines in the docket control order prevailed over deadlines set by statute, the language chosen further reflects the parties' understanding that the deadline for the section 74.351 expert report would be extended to January 11, 2006.

Spectrum and Sims argue that the docket control order did not extend the section 74.351 deadline because the purpose for requiring service of the section 74.351 expert report is different than the purpose for designating an expert during discovery. Although the different purposes served by the chapter 74 report and discovery may generally lead to the conclusion that a defendant would not typically extend the chapter 74 deadline, as we have already noted the statute itself envisions situations where a defendant could be willing to enter into such an agreement. See TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a) (Vernon Supp.2006) (providing date can be extended by written agreement).

The circumstances present at the time the docket control order was entered in this case were unique and very distinct from those present in a typical case that is first filed in state court where the defendant is anticipating receipt of the chapter 74 report to evaluate whether the claim is frivolous. See Palacios, 46 S.W.3d at 878 (noting one purpose of the expert report requirement is to deter frivolous claims). Here, before the docket control order was entered in state court, the parties had been engaged in federal litigation for approximately seven months until the federal lawsuit was dismissed. Given the length of time the federal litigation had been pending, the defendants already had information from which they could determine whether the McDaniels' claim was frivolous. See FED.R.CIV.P. 26(a)(1), 26(f) (requiring parties to file initial disclosures and to have a conference of the parties to consider the nature and basis of their claims and defenses); McDaniel v. U.S., No. CIV.A.SA–04–CA–0314, 2004 WL 2616305, at *5, *10 (W.D.Tex. Nov.16, 2004) (indicating some discovery had been undertaken during pendency of federal litigation). Therefore, extending the deadline for filing the section 74.351 expert report is a reasonable quid pro quo for the McDaniels' agreement to allow immediate discovery.

Spectrum and Sims rely on four cases that have previously addressed whether a docket control order incorporated a written agreement extending the date for serving a section 74.351 expert report; however, each of these prior decisions is distinguishable based on the language used or the timing of the entry of the orders. Most noteworthy, the instant docket control order contains a specific paragraph we cannot ignore, "[i]t is further ORDERED to the extent these deadlines may be in conflict with deadlines set by role or statute, the deadlines established by this Docket Control Order shall take precedence." None of the four cases cited by Spectrum and Sims involved a docket control order containing a similar provision. Cf., Rugama v. Escobar, No. 04–05–00764–CV, 2006 WL 923701, at *2 (Tex.App.-San Antonio Apr.5, 2006, no pet.); Hall v. Mieler, 177 S.W.3d 278, 280 (Tex.App.-Houston [1st Dist.] 2005, no pet.); Olveda v. Sepulveda, 141 S.W.3d 679, 683 (Tex.App.-San Antonio 2004), pet. denied, 189 S.W.3d 740 (Tex.2006); Finley v. Steenkamp, 19 S.W.3d 533, 540 n. 2

(Tex.App.-Fort Worth 2000, no pet.). Further, in both *Rugama* and *Hall,* the orders at issue did not expressly mention any expert report. *Rugama,* 2006 WL 923701, at *2; *Hall,* 177 S.W.3d at 280. In the instant case, by contrast, the agreed docket control order provides a specific date for "a written report and curriculum vitae of all retained experts" and further sets forth the parties intent for that deadline to take "precedence" over "deadlines set by rule or statute." Finally, the decisions in *Finley* and *Olveda* are readily distinguishable because the orders in those cases were not entered until *after* the section 74.351 deadline had passed. *Finley,* 19 S.W.3d at 540 n. 2; *Olveda,* 141 S.W.3d at 683. After the deadline had passed, the defendant would have no incentive for extending a deadline already missed.

Finally, Spectrum and Sims argue that the use of identical language in the docket control order for both the plaintiffs and the defendants shows that the parties did not intend to extend the section 74.351 deadline because the defendants were not required to file such a report. Although under article 4590i, an expert report could not be admitted into evidence or used in a deposition, trial, or other proceeding, section 74.351(t) permits a section 74.351 expert report to be admitted and used if the claimant uses the report for any purpose other than to meet the service requirement of subsection (a). *Compare* Act of May 1, 1995, 74th Leg. R.S., ch. 140, § 1, 1995 Tex. Gen. Laws. 985, 986–87 (former article 4590i), *repealed by* Act of June 2, 2005, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884, *with* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(t) (Vernon Supp. 2006). Accordingly, no statutory support currently exists for the notion that the expert who provides the chapter 74 report is necessarily distinct from any other retained expert. *See McDaniel,* 2004 WL 2616305, at *8 (rejecting the argument that a section 74.351 report is "somehow a different species of expert report than that required under the general rules of discovery").

CONCLUSION

We hold the parties' written agreement, as reflected in the docket control order as a whole, can be given a definite and certain meaning as a matter of law and includes within it an unambiguous agreement that extended the date for serving the section 74.351 expert report. Accordingly, we reverse the trial court's order granting the defendants' motion to dismiss, and remand the cause to the trial court for further proceedings.

Dissenting Opinion by: REBECCA SIMMONS, Justice, joined by KAREN ANGELINI, Justice.

REBECCA SIMMONS, Justice, joined by KAREN ANGELINI, Justice, dissenting.

I agree with the majority on one issue: that the Agreed Special Setting and Docket Control Order ("docket control order") is unambiguous and can be given a definite and certain meaning as a matter of law. I disagree, however, with the meaning the majority confers on the order. The majority holds that the deadline for reports from all retained experts, which would include medical liability experts under section 74.351(a) of the medical liability section of the Texas Civil Practice and Remedies Code and retained consulting experts, was extended by the docket control order. Under the plain terms of the docket control order, however, only the deadline for the reports of retained testifying experts was extended. TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a), (b) (Vernon Supp.2006). Accordingly, McDaniel's expert report was

untimely and the trial court properly dismissed the health care liability claim with prejudice. *Id.* I respectfully dissent.

### DEADLINE RELATING TO PLAINTIFFS' DESIGNATION OF TESTIFYING EXPERTS

The docket control order is fairly generic, with deadlines for the parties to designate expert witnesses they intend to call to testify at the trial of the case, a deadline for mediation and a deadline for completion of discovery as well as the date of the trial setting. The majority holds that the following paragraph ("paragraph 1") constitutes an agreement by the parties to extend the deadline for the provision of the section 74.351(a) expert report:

1. Plaintiffs will designate all expert witnesses that *they intend to call at the trial* of this case, live or by deposition, and shall provide a written report and curriculum vitae of *all retained experts* in this case on or before *January 11, 2006.*[1] (emphasis added)

The majority reasons that because paragraph 1 specifically references "retained" experts and a section 74.351 expert is always a "retained" expert, the provision perforce extends the deadline for serving the section 74.351 report. This interpretation fails to recognize that the retained experts referenced in paragraph 1 are limited to those that plaintiffs "intend to call at the trial." Rather than construe the paragraph based on its plain meaning, the majority uses two additional paragraphs to provide new meaning to the word "retained." The majority's holding misconstrues the rules of civil procedure relating to expert discovery, as well as, the purpose and rules relating to the expert report under section 74.351(a) of the Civil Practice and Remedies Code.

Paragraph 1 unambiguously sets forth the deadline for designating plaintiffs' testifying experts and requires the provision of a curriculum vitae and report for those testifying experts that are retained. Civil Procedure Rule 192.7 defines two types of experts: testifying and consulting. TEX.R. CIV. P. 192.7. Both types of these experts may be retained.[2] The difference is that the consulting expert is retained, but is not a testifying expert. *Id.* Under Rule 192.3(e), a party is not required to disclose a retained consulting expert, provided his mental impressions and opinions have not been reviewed by a testifying expert. *See* TEX.R. CIV. P. 192.3(e) ("consulting only" experts). The distinction between testifying and consulting experts is critical. The majority's failure to limit paragraph 1's application to **testifying** experts results in the requirement to produce reports and curricula vitae of all "retained" experts including any retained "consulting only" expert. Such an interpretation of this generic language is unreasonable given the protection afforded by the rules to "consulting only" experts, and the lack of any language indicating an intent to forego this protection by the parties. Here, the parties clearly intended, through paragraphs 1 and 2, to modify the deadlines to designate their testifying, rather than consulting experts, and provide their retained testifying experts' reports and resumes. *See* TEX.R. CIV. P. 195.1–195.7.

---

1. This language is mirrored in paragraph 2 which provides the deadlines for the defendant to designate its testifying experts.

2. A retained testifying expert is an expert who is retained by, employed by, or otherwise subject to the control of the party. *See* TEX.R. CIV. P. 194.2(f)(4), 195.3. Generally, parties make no agreement to provide reports from non-retained experts not subject to their control.

The application of paragraph 1 to only retained testifying experts is supported by the very purpose of the section 74.351 expert report. To accomplish its purpose, a section 74.351 report must detail the specific conduct the plaintiff has called into question. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 878–79 (Tex.2001). Additionally, the report must provide a basis for the trial court to conclude that the claims have merit. *Id.* Under Chapter 74, "expert report" means a "written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6). There is no requirement that the report address anything other than an issue relating to liability or causation. *Id.* § 74.351(j). Provided the claimant does not use the report in any fashion, no mention of either the report or its author may be made in the case. *Id.* § 74.351(k), (t). Like consulting only experts, the experts referenced in section 74.351, are not, by statute, testifying experts under the discovery rules without some further action on the part of the plaintiff.[3] Paragraph 1 simply does not suffice to transform a section 74.351 expert report into a report of a testifying expert under the discovery rules. Although a

section 74.351 expert is a retained expert, such expert is not a retained testifying expert unless the plaintiff has specifically designated him as such.

Moreover, section 74.351 has a discrete purpose separate and apart from the rules relating to discovery. It is designed to dispose of frivolous medical liability suits at the outset. It has specific provisions and requirements not addressed by this docket control order. The section 74.351 expert report is a "threshold" requirement in a health care liability suit without which the plaintiff cannot proceed to trial. "Thus, the expert report required by § 74.351 is separate from the designation of experts contemplated under the discovery rules." *Rugama v. Escobar,* No. 04–05–00764–CV, 2006 WL 923701, at *2 (Tex. App.-San Antonio Apr.5, 2006, no pet.) (mem.op.) (citing *Murphy v. Russell,* 167 S.W.3d 835, 838 (Tex.2005)).[4] The purpose of designating testifying experts and producing expert reports during discovery is to prevent trial by ambush and to allow the parties to obtain full knowledge of the expert opinions before trial. *Gutierrez v. Dallas Indep. Sch. Dist.,* 729 S.W.2d 691, 693 (Tex.1987). The contrast between the full disclosure and discovery of the testifying expert and the statutory restrictions under section 74.351(j) reinforces the differences between the two experts. Tex. Civ. Prac. & Rem.Code Ann. § 74.351(j).

Not only does a plain reading of paragraph 1 exclude its application to a section

---

3. The majority's conclusion that "no statutory support currently exists for the notion that the expert who provides the Chapter 74 report is necessarily distinct from any other retained expert" ignores the statutory scheme set forth in Chapter 74 and specifically the expert rules in section 74.351.

4. The majority attempts to distinguish *Rugama* because the docket control order did not mention a specific deadline for an expert re-

port as contrasted with paragraph 1 in this case. Yet, the stated reasoning in *Rugama,* that there is a distinction between testifying experts and section 74.351 experts, still applies. *Rugama,* 2006 WL 923701, at *2. Indeed, most generic docket control order forms, including those offered to the public in Bexar County, contain a provision for deadlines for a plaintiff to produce expert witness reports from retained experts.

74.351 expert report, our court has previously determined that similar language in a docket control order did not extend the deadline for serving the article 4590i expert report under the Medical Liability and Insurance Improvement Act of Texas.[5] Essentially the same language in paragraph 1 was in the docket control order at issue in *Olveda v. Sepulveda*, 141 S.W.3d 679, 683 (Tex.App.-San Antonio 2004, pet. denied). The docket control order provided: "Plaintiffs shall designate any and all expert witnesses and provide curriculum vitaes and **reports of retained experts** on or before June 11, 2003." (emphasis added). In *Olveda*, we determined the docket control order did not extend the article 4590i expert report deadline for a number of reasons, including that "the order mentions expert witnesses and 'retained' experts, indicating testifying experts" rather than the experts referenced under the Act. *Id.* at 684. Thus, we recognized in *Olveda* the important distinction between a testifying expert and a medical liability expert under article 4590i. The language in paragraph 1 in this case is even clearer—it applies only to testifying experts and the requirement of a written report and curriculum vitae applies only to the retained testifying expert witnesses.

Other courts reviewing discovery control orders have deemed them insufficient to extend the deadline for submission of the expert report under either article 4590i or section 74.351. *See, e.g., Brock v. Sutker*, 215 S.W.3d 927, 929 (Tex.App.-Dallas 2007, no pet.) (scheduling order requiring plaintiff provide report from any retained expert did not extend section 74.351 expert report deadline); *Hall v. Mieler*, 177 S.W.3d 278, 282 (Tex.App.-Houston [1st Dist.] 2005, no pet.) (docket control order

did not extend the 4590i expert report deadlines and Hall's failure to file the report did not constitute a mistake or accident). Given the recognized distinction between testifying experts and Chapter 74 experts, without a clear reference to section 74.351 experts or their reports in paragraph 1, I cannot find any intent on behalf of the parties to extend the threshold expert deadlines.

## ADDITIONAL PARAGRAPHS

Faced with the clear meaning of paragraph 1, the majority relies on two additional paragraphs in the docket control order to convert a section 74.351 expert into a "retained expert."

> It is further ORDERED to the extent these deadlines may be in conflict with deadlines set by rule or statute, the deadlines established by this Docket Control Order shall take precedence.

> It is further ORDERED that the parties shall conduct discovery as soon as practicable, notwithstanding the limiting provisions found in Chapter 74 of the Texas Civil Practices and Remedies Code.

The first provision is a common "belt and suspenders" provision indicating the attorneys intend the docket control order to govern the discovery and other deadlines they previously identified. It is important to note the operative language is "these deadlines **may** be in conflict," not that the deadlines are in conflict. (emphasis added) Yet, the majority is compelled to find some statutory deadline that will conflict with the deadlines set forth in paragraph 1 under the auspices of contract construction.[6] The rule of construction "that each part of the contract must be given effect" is used to give a whole new effect to

---

**5.** Article 4590i was repealed by Act of June 2, 2003, 78th Leg., R. S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884, and has been recodified at TEX. CIV. PRAC. & REM.CODE ANN.

§ 74.351 (Vernon Supp.2005) (effective Sept. 1, 2003).

**6.** The majority finds that the statutory conflict envisioned by the parties must be the section

paragraph 1, rather than meaning to the provision being construed. It is not necessary to create a statutory conflict to give this provision the meaning intended: that in the event there is a conflict with a rule or statute, which the parties did not envision or they would have specifically addressed the conflict, the deadlines spelled out in the docket control order would be maintained. The provision simply cannot support an interpretation that the parties intended to extend the deadline for the section 74.351 expert report through this oblique reference to a possible conflict with a rule or statute.

I now address the provision in the docket control order that specifically references Chapter 74 of the Civil Practice and Remedies Code. The majority interprets the language in this section to mean the docket control order permits the parties to conduct discovery not otherwise permitted until the section 74.351 expert report is filed. *See* § 74.351(s), (u). I agree. This paragraph is clear evidence of the parties' intent to proceed with discovery outside the limitations specifically provided by section 74.351(s):

> Until a claimant has served the expert report and curriculum vitae as required by Subsection (a), all discovery in a health care liability claim is stayed ...

and section 74.351(u):

> Notwithstanding any other provision of this section, after a claim is filed all claimants, collectively, may take not more than two depositions before the expert report is served as required by Subsection (a).

I disagree, however, that the phrase "notwithstanding the limiting provisions found in Chapter 74" shows the parties' intent to extend the deadline for serving the expert report.[7] Rather it shows the parties knew how to reference specifically the applicable medical liability provisions of the Civil Practice and Remedies Code they wanted to extend, and continue the discovery that was initiated in the federal suit. However, this provision does not purport to address the expert report deadline of section 74.351(a). The majority opinion correctly states: "[H]aving expressly referenced chapter 74, the parties were cognizant of the limitations and deadlines established by that statutory provision." Yet, the majority never addresses the pertinent question-knowing the deadlines of chapter 74, why didn't the parties expressly extend the deadline for the expert report? The parties need not specifically cite the statute, but they must do more to reach an agreement than reference a standard discovery order provision. Neither of the paragraphs relied on by the majority to support their interpretation of paragraph 1 support its application to the section 74.351 expert report deadline.

74.351 expert report deadline. No reference is made to the section 74.352 discovery deadlines in health care liability claims. TEX. CIV. PRAC. & REM.CODE ANN. § 74.352. Should they be implemented, the discovery deadlines referenced in the docket control order would conflict with those in section 74.352. Specifically, section 74.352 has deadlines for interrogatories and requests for production that would conflict with the deadline for completion of discovery in the docket control order. So it is just as likely these are the statutory deadlines with which they "may" conflict once implemented.

7. This case was originally filed in federal court on April 15, 2004 and the scheduling order signed on July 2, 2004 sets forth the discovery deadlines. The federal court dismissed the suit on November 16, 2004, four months into the discovery process. The case was re-filed in state court on May 25, 2005. The plaintiffs did not file their expert report until January 11, 2006, some 234 days after the case was filed in state court and 639 days after the case was filed in federal court.

CONCLUSION

The docket control order, signed by the parties on July 15, 2006, modified the discovery deadlines as provided under the rules of civil procedure. The order, however, lacks any hint of the parties' intent to extend the deadline for serving the section 74.351 expert report. The language reflected in paragraphs 1 and 2 is common to many docket control orders and unambiguously sets the deadline for providing reports by retained testifying experts. The two additional provisions relied on by the majority cannot transform a standard docket control order into an agreement to extend the section 74.351 expert report deadline. Absent a written agreement, McDaniel's section 74.351 expert report was untimely and the trial court had no discretion but to dismiss McDaniel's health care claims with prejudice and award reasonable attorneys fees. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(b). Because the trial court's dismissal was statutorily mandated, I respectfully dissent.

