Affirmed and Memorandum Opinion filed April 14, 2009








Affirmed and Memorandum Opinion filed April 14, 2009.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00994-CV

____________

 

MINNIE SHELTON, INDIVIDUALLY AND AS
REPRESENTATIVE OF THE ESTATE OF ANNIE MAE BROWN, Appellant

 

V.

 

THE UNIVERSITY OF TEXAS MEDICAL
BRANCH AT GALVESTON AND THE UNIVERSITY OF TEXAS MEDICAL BRANCH AT GALVESTON
D/B/A JOHN SEALY HOSPITAL, Appellees

 



 

On Appeal from the 405th
District Court

Galveston County, Texas

Trial Court Cause No. 07CV0106

 



 

M E M O R A N D U M   O P I N I O N








Appellant, Minnie Shelton, individually and as
representative of the estate of Annie Mae Brown, filed suit against appellees,
The University of Texas Medical Branch at Galveston and The University of Texas
Medical Branch at Galveston d/b/a John Sealy Hospital ( collectively AUTMB@), ostensibly
asserting causes of action for premises defect and negligent use of tangible
personal property.  Arguing appellant actually was asserting a health care
liability claim, UTMB moved to dismiss appellant=s lawsuit for
failure to serve the required expert reports within 120 days of filing suit. 
The trial court granted UTMB=s motion and appellant appealed.  Finding
no error, we affirm.

Factual and procedural background

On July 16, 2006, Annie Mae Brown, age 90, was admitted to
UTMB=s John Sealy
Hospital for medical care and treatment of a reoccurrence of vulvar cancer.  At
the time she was admitted, Mrs. Brown was legally blind.  During her
hospitalization, Mrs. Brown was assessed as a fall risk and assigned to a
hospital bed equipped with side rails.  The side rails were for Mrs. Brown=s safety and part
of her physician=s orders and hospital policy incorporated
into her medical care and treatment while hospitalized.  On July 26, 2006, the
side rails were down and Mrs. Brown allegedly attempted to get out of the bed
and fell, injuring her femur.  Mrs. Brown died four months later, allegedly as
a result of the injury  sustained in her fall.  

Appellant filed suit asserting UTMB is liable for Mrs.
Brown=s injury and
subsequent death.  Specifically, appellant alleges UTMB is liable because it
failed to (1) follow Mrs. Brown=s physician=s orders regarding
raising the bed rails on Mrs. Brown=s hospital bed,
(2) provide a hospital bed with a bed alarm or bed pan, (3) provide adequate
nursing staff, and (4) provide additional chemical or physical restraints to
prevent Mrs. Brown from injuring herself.  Contending her claims concerned
premises defect and negligent use of tangible personal property tort claims,
appellant filed suit against UTMB pursuant to the common law and the Texas Tort
Claims Act (ATTCA@) on April 5, 2007.  See Tex. Civ.
Prac. & Rem. Code Ann. ' 101.001 et seq. (Vernon 2005).








After it answered appellant=s suit, UTMB filed
a motion to dismiss pursuant to ' 74.351 of the
Texas Civil Practice and Remedies Code.  In its motion to dismiss, UTMB
asserted appellant=s suit must be dismissed with prejudice
because appellant had not served the expert report and curriculum vitae
required by ' 74.351 within the 120-day deadline.  Appellant filed
multiple responses arguing the Medical Liability Act did not apply to her
claims and, even if it did, the parties had agreed to extend the 120-day expert
report deadline in an agreed docket control order.  Appellant also filed a
motion seeking sanctions against UTMB for the filing of frivolous pleadings. 
Eventually, the trial court granted UTMB=s motion to
dismiss and denied appellant=s motion for sanctions.  Appellant then
filed a motion for new trial, which the trial court denied.  This appeal
followed.

Discussion

In two issues appellant contends the trial court erred in
(1) granting UTMB=s Motion to Dismiss, and (2) denying
appellant=s motion for sanctions.  We address each issue in
turn.

A.      Did the
trial court err when it granted UTMB=s motion to
dismiss?

In her first issue, appellant makes a two-pronged attack on
the trial court=s granting of UTMB=s motion to
dismiss.  First, appellant contends she did not plead a health care liability
claim controlled by the Medical Liability Act, but instead alleged only a
premises defect and negligent use of tangible personal property claim governed
exclusively by the TTCA and the common law.  Next, she asserts even if the
Medical Liability Act controls, the parties agreed to extend the 120-day expert
report deadline through the agreed docket control order entered by the trial
court.

1.       The
standard of review.








Generally, we review a trial court=s order granting a
motion to  dismiss for failure to timely file a ' 74.351(a) expert
report under an abuse of discretion standard.  Holguin v. Laredo Regional
Medical Center, L.P., 256 S.W.3d 349, 352 (Tex. App.CSan Antonio 2008,
no pet.) (citing American Transitional Care Ctrs. of Tex., Inc. v. Palacios,
46 S.W.3d 873, 875 (Tex. 2001)).  However, when the issue presented requires
statutory interpretation or a determination of whether Chapter 74 applies to a
claim, i.e. a question of law, we use a de novo standard or review.  Id. 
Whether a claim is a health care liability claim is a question of law.  Id.

2.       Appellant=s lawsuit asserts
a health care liability claim.

In her brief, appellant asserts Aa medical
malpractice or medical negligence cause of action based on Chapter 74 of the
Tex. Civ. Prac. & Rem. Code and a Texas Tort Claim Act  cause of action
based on Chapter 101 of the Tex. Civ. Prac. & Rem. Code are two separate
and distinct cause [sic] of actions [sic].@  Based on this
fundamental misunderstanding of how different statutes can interact to impact a
party=s legal claim,
appellant then argues UTMB=s motion to dismiss based on ' 74.351 not only
has no merit, it constitutes a sanctionable frivolous pleading.  Because a
claimant suing a governmental entity that is a health care provider for a
health care liability claim must comply with both the TTCA and the Medical
Liability Act (AMLA@) to maintain her
suit, we disagree.  See University of Texas Health Sci. Ctr. at Houston v.
Gutierrez, 237 S.W.3d 869, 874 (Tex. App.CHouston [1st
Dist.] 2007, pet. denied).

In Texas, sovereign immunity deprives a trial court of
subject matter jurisdiction for lawsuits in which the state or certain
governmental units have been sued unless the state consents to suit. Tex.
Dept. of Parks and Wildlife v. Miranda, 133 S.W.3d 217, 224 (Tex. 2004).
The TTCA provides a limited waiver of sovereign immunity, allowing suits to be
brought against governmental units only in certain, narrowly defined
circumstances. Tex. Civ. Prac. & Rem. Code Ann. '' 101.021; Tex.
Dept. of Criminal Justice v. Miller, 51 S.W.3d 583, 587 (Tex. 2000).  The
TTCA does not create new duties, but simply waives immunity for the instances
specified in the statute.  City of Denton v. Van Page, 701 S.W.2d 831,
834 (Tex. 1986).  It is undisputed UTMB is a hospital and a hospital system
chartered by the State of Texas.  Therefore, UTMB is immune from suit unless
appellant establishes UTMB owed Mrs. Brown a legal duty and breached that duty
under circumstances falling within the TTCA waiver of immunity.  Id.








The specific TTCA provision under which appellant alleges
waiver provides that a Agovernmental unit in the state is liable
for . . . personal injury and death so caused by a condition or use of tangible
personal or real property if the governmental unit would, were it a private
person, be liable to the claimant according to Texas law.@ Tex. Civ. Prac.
& Rem. Code Ann. ' 101.021(2).  For purposes of this appeal,
UTMB does not dispute this case involves the use of tangible personal property
and therefore falls within this limited waiver of UTMB=s immunity. 
However, UTMB contends appellant seeks relief for claims arising out of an
alleged breach of duties UTMB owed as a result of UTMB=s care and
treatment of  Mrs. Brown while she was hospitalized at UTMB, therefore making
appellant=s suit a health care liability claim governed by the
MLA.  Tex. Civ. Prac. & Rem. Code Ann. ' 74.001 et seq.
(Vernon 2005).  

In Texas, to bring a medical negligence or health care
liability claim against a physician or health care provider, a claimant must
comply with the provisions of the MLA.  Id.  This particular statute is
superior to all other laws, regulations, and rules of civil procedure.  Id.
at ' 74.002.

Under the MLA, a Ahealth care
provider@ is defined as Aany person,
partnership, professional association, corporation, facility, or institution
duly licensed, certified, registered, or chartered by the State of Texas to
provide health care, including . . . a health care institution.@  Id. at '
74.001(a)(12)(A)(vii).  A health care institution includes a hospital or
hospital system.  Id. at ' 74.001(a)(11)(G)
& (H).  UTMB is a hospital and hospital system chartered by the State of
Texas.  Tex. Educ. Code Ann. ' 74.001 et seq. (Vernon 2002).  Therefore,
UTMB is a Ahealth care provider@ as defined by the
MLA.

The MLA defines a Ahealth care
liability claim@ as:








a cause of action against a health
care provider or physician for treatment, lack of treatment, or other claimed
departure from accepted standards of medical care, or health care, or safety or
professional or administrative services directly related to health care, which
proximately results in injury to or death of a claimant, whether the claimant=s claim or cause
of action sounds in tort or contract.

Tex.
Civ. Prac. & Rem. Code Ann. ' 74.001(a)(13). 
Whether a claim falls within the definition of Ahealth care
liability claim@ requires an examination of the essence or
underlying nature of the plaintiff=s claim.   Diversicare
Gen. Partners, Inc. v. Rubio, 185 S.W.3d 842, 851 (Tex. 2005).  A health
care liability claim is based on a breach of a standard of care applicable to
health care providers.  Marks v. St. Luke=s Episcopal Hosp., 229 S.W.3d 396,
400 (Tex. App.CHouston [1st Dist.] 2007, pet. granted).  To state a health
care liability cause of action, the act or omission complained of must be an
inseparable part of the rendition of medical services.  Id.  When the
essence of a suit is a health care liability claim, a claimant cannot avoid the
requirements of the MLA through artful pleading.  Garland Cmty. Hosp. v.
Rose, 156 S.W.3d 541, 543 (Tex. 2004).








We turn now to appellant=s allegations
against UTMB.  Appellant=s factual allegations against UTMB can be
summarized as follows: (1) Mrs. Brown was hospitalized at UTMB for the
rendition of medical care and treatment for a reoccurrence of vulvar cancer;
(2) Mrs. Brown was 90 years old, legally blind, and had difficulty walking; (3)
Mrs. Brown was a known fall risk; (4) Mrs. Brown=s treating
physician had ordered that she be kept in a hospital bed equipped with bed
rails and that the bed rails be kept raised at all times; (5) hospital policy dictated
that Mrs. Brown have a hospital bed equipped with bed rails and that the bed
rails be kept raised at all times; (6) that on July 26, 2006, the bed rails
were not raised, and when Mrs. Brown attempted to get out bed on her own, she
fell, sustaining a broken leg which ultimately resulted in her death. 
Appellant then concluded that UTMB=s negligent
failure to keep Mrs. Brown=s bed rails up in violation of hospital
policy and Mrs. Brown=s doctor=s orders
proximately caused Mrs. Brown=s injury and ultimate death.  Because
appellant=s allegations state claims for departures from
accepted standards of medical care, health care, and safety directly related to
health care, we hold they constitute a health care liability claim subject to
the MLA.  Marks, 229 S.W.3d at 402.

3.       The
parties did not agree to extend the 120-day deadline to serve the ' 74.351(a) expert
report.

Because appellant=s cause of action
is a health care liability claim subject to the MLA, appellant was required to
comply with ' 74.351(a) of the MLA.  Section 74.351(a) provides:

a claimant shall, not later than the 120th day after the date the
original petition was filed, serve on each party or the party=s attorney one or more expert
reports, with a curriculum vitae of each expert listed in the report for each
physician or health care provider against whom a liability claim is asserted.

 

Tex.
Civ. Prac. & Rem. Code Ann. ' 74.351(a).  An Aexpert report@ is defined as:

a written report by an expert that provides a fair summary of the
expert=s opinions as of the date of the
report regarding applicable standards of care; the manner in which the care
rendered by the physician or health care provider failed to meet the standards,
and the causal relationship between that failure and the injury, harm or
damages claimed.

Id. at 74.351(r)(6). 
If the required expert report is not served by the statutory deadline, the
trial court must dismiss the case with prejudice.  Id. at 74.351(b).








It is undisputed appellant did not serve the required
expert report on UTMB by the 120-day deadline.  However, appellant contends the
parties agreed to extend the 120-day deadline through an agreed ADiscovery and
Docket Control Order@ signed by the trial court on May 17,
2007.  We apply contract principles in determining whether the parties entered
into an agreement to extend the 120-day report deadline.  McDaniel v.
Spectrum Healthcare Res., Inc., 238 S.W.3d 788, 791 (Tex. App.CSan Antonio 2007,
pet. granted).  In construing a written agreement, we must ascertain and give
effect to the parties= intentions as expressed in the agreement. 
King v. Cirillo, 233 S.W.3d 437, 440 (Tex. App.CDallas 2007, pet.
filed).  We consider the entire writing and attempt to harmonize and give
effect to all the provisions of the contract by analyzing the provisions with
reference to the whole agreement.  Id.   If the agreement is susceptible
to more than one reasonable interpretation, it is ambiguous.  Id. 
Whether an agreement is ambiguous is a question of law.  Id.  The
ambiguity must be evident by examining the document itself, it cannot be
created by considering parol evidence of the parties= intent.  Id. 
If the agreement is not ambiguous, courts do not consider extrinsic evidence
when interpreting the agreement.  Id.

In the ADiscovery and Docket Control Order,@  the parties
agreed appellant was to designate her experts by December 3, 2007.  The parties
further agreed Aany party designating a testifying expert
witness is ORDERED to provide, no later than the dates set for such
designation, the information set forth in Rule 194.2(f) and a written report
prepared by the expert setting the substance of the experts [sic] opinions,
unless a deposition is taken of the expert.@  Finally, the
parties agreed Aan expert not designated prior to the
ordered deadlines shall not be permitted to testify absent a showing of good
cause.@  The docket control
order does not mention the MLA, Chapter 74 of the Civil Practice and Remedies
Code, or ' 74.351.








A ' 74.351 expert report is a threshold
requirement to pursue a health care liability claim.  Rugama v. Escobar,
No. 04-05-00764-CV, 2006 WL 923701, at *2 (Tex. App.CSan Antonio April
5, 2006, no pet.)(mem. op.).  In a ' 74.351 expert
report, the expert is only required to address liability and causation.  Tex.
Civ. Prac. & Rem. Code Ann. ' 74.351(r)(6).  In
enacting this requirement, the Texas Legislature decided discovery should not
proceed until at least one expert has examined the claimant=s case and
determined it has merit and is not frivolous.  Rugama, 2006 WL 923701,
at *2.  As a result, until a claimant has served the expert report and
curriculum vitae required by ' 74.351(a), most forms of discovery are
stayed.  Id. (citing Tex. Civ. Prac. & Rem. Code Ann. ' 74.351(s) &
(u)).  On the other hand, the purpose of designating testifying experts and
producing expert reports during discovery is to prevent trial by ambush and to
allow the parties to obtain full knowledge of the expert opinions before
trial.  Gutierrez v. Dallas Indep. Sch. Dist., 729 S.W.2d 691, 693 (Tex.
1987).  Therefore, the expert report required by ' 74.351 is
separate and distinct from the designation of experts contemplated by the rules
of discovery.  Rugama, 2006 WL 923701, at *2.  The validity of this
distinction is demonstrated where a claimant chooses not to use the ' 74.351 report in
any other manner, no mention of the report or its author can be made in the
case.  Tex. Civ. Prac. & Rem. Code Ann. ' 74.351(k).  

In Rugama, the San Antonio Court of Appeals
addressed a case with remarkably similar facts.  As in this case, the docket
control order in Rugama scheduled Apre-trial
conferences, jury selection, and trial, and coordinate[d] these settings with
key litigation deadlines, such as amending pleadings and completing discovery.@  Rugama,
2006 WL 923701, at *2.  Just like in the current case, the Rugama docket
control order bore the signatures of counsel for both parties and the trial
court judge.  Id.  Finally, the Rugama docket control order also
did not mention the ' 74.351 expert report, ' 74.351 in
general, or even generally reference statutory deadlines for expert reports.  Id. 
The San Antonio court went on to conclude: 

Aviewed in context, the . . . deadline refers to Escobar=s deadline for designating expert
witnesses expected to testify at trial.  Nothing in the order either directly
or by implication suggests that the parties had a written agreement to extend
the deadline for serving the '74.351(a) expert report.  With no written agreement by the parties to
extend the time for filing expert reports, Escobar=s expert report was untimely.@

Rugama, 2006 WL 923701,
at *2 (internal citations omitted).  We agree with the San Antonio court=s reasoning and
hold the docket control order at issue here is not ambiguous, is nothing more
than a discovery and docket control order contemplated by the Rules of Civil
Procedure, and did not extend the deadline to serve the ' 74.351(a) expert
report.








Appellant cites the McDaniel case in support of her
contention the agreed discovery and docket control order at issue here
contained a written agreement to extend the ' 74.351(a) expert
report.  McDaniel, 238 S.W.3d at 795. The McDaniel docket control
order contained the following language:

It is further ORDERED to the extent these deadlines may be in conflict
with deadlines set by rule or statute, the deadlines established by this Docket
Control Order shall take precedence . . .  It is further ORDERED that the
parties shall conduct discovery as soon as practicable, notwithstanding the
limiting provisions found in Chapter 74 of the Texas Civil Practice and
Remedies Code.

Id. at 792.  The
cited language led the San Antonio court to conclude the parties had agreed to
extend the ' 74.351 expert report deadline beyond the 120-day
deadline.  Because the agreed docket control order at issue here does not
contain any similar language referencing the ' 74.351 expert
report, ' 74.351 in
general, or even generally referencing statutory deadlines for expert reports,
we find McDaniel distinguishable and choose not to accept appellant=s invitation to
apply it to this case.

Because appellant failed   to serve  UTMB with the required
expert report by the 120-day deadline, and the parties had not agreed in
writing to extend the 120-day deadline as required by the MLA we hold the trial
court properly dismissed appellant=s cause of
action.  Id., Brock v. Sutker, 215 S.W.3d 927, 929 (Tex. App.CDallas 2007, no
pet.).  We overrule appellant=s first issue.

B.      Did the
trial court abuse its discretion when it denied appellant=s motion for
sanctions?

Alleging UTMB=s motion to
dismiss pursuant to ' 74.351 had no basis in law or fact,
appellant filed a motion seeking sanctions against UTMB pursuant to Chapter 10
of the Civil Practice and Remedies Code.  Tex. Civ. Prac. & Rem. Code Ann. '' 10.001, 10.004(a)
& (b) (Vernon 2002).  The trial court denied appellant=s motion.  In her
second issue, appellant contends the trial court erred when it denied appellant=s motion.  We
disagree.

 








1.       The
standard of review.

The standard of review for an order denying a motion for
sanctions is abuse of discretion.  Cire v. Cummings, 134 S.W.3d 835, 838
(Tex. 2004).  The test for an abuse of discretion is not whether, in the
opinion of the reviewing court, the facts present an appropriate case for the
trial court=s action, but whether the court acted without
reference to any guiding rules and principles.  Id.  The trial court=s ruling should be
reversed only if it was arbitrary or unreasonable.  Id. at 839.

2.       The trial
court did not abuse its discretion when it denied appellant=s motion for
sanctions.

Section 10 of the Civil Practice and Remedies Code provides
in part: A[a] court that determines that a person has signed a
pleading or motion in violation of [s]ection 10.001 may impose a sanction on
the person, a party represented by the person, or both.@  Tex. Civ. Prac.
& Rem. Code Ann. ' 10.004.  Courts must presume that
pleadings are filed in good faith.  Thottumkal v. McDougal, 251 S.W.3d
715, 718 (Tex. App.CHouston [14th Dist.] 2008,  pet. denied). 
The party seeking sanctions bears the burden of overcoming the presumption of
good faith in the filing of pleadings.  Id.   

As we have already determined, in our resolution of
appellant=s first issue on appeal, that the trial court properly
granted UTMB=s motion to dismiss, and appellant has not presented
any new arguments to meet her burden to overcome the presumption of good faith
in her second issue on appeal but merely repeated prior arguments that UTMB=s motion to
dismiss was groundless and frivolous.  Accordingly we hold the trial court did
not abuse its discretion when it denied appellant=s motion for
sanctions.  We overrule appellant=s second issue.

 

 








Conclusion

Having addressed and overruled both issues raised by
appellant in this appeal, we affirm the trial court=s orders granting
UTMB=s motion to
dismiss and denying appellant=s motion for sanctions.

 

 

 

 

/s/      John S. Anderson

Justice

 

 

Panel consists of
Chief Justice Hedges and Justices Anderson and Seymore.